**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1857

_____

| | |
|---|---|
| Jerald R. Kiernan; | * |
| Andrew D. Kiernan, | * |
| | * |
| Claimants - Appellants, | * |
| | *  Appeal from the United States |
| v. | *  District Court for the |
| | *  District of Minnesota. |
| Piper Jaffray Companies, Inc., | * |
| a Delaware corporation; | * |
| Piper Jaffray, Inc., formerly known as | * |
| Piper Jaffray & Hopwood, Inc., | * |
| a Delaware corporation, | * |
| | * |
| Respondents - Appellees. | * |

_____

Submitted: November 19, 1997
Filed:  February 25, 1998

_____

Before BOWMAN, BRIGHT, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Appellants Jerald and Andrew Kiernan submitted claims related to their alleged unlawful termination by Piper Jaffray, Inc. to the National Association of Securities Dealers (NASD) for arbitration before a three-member panel.  After the panel handed down an award in favor of Piper Jaffray, the Kiernans filed a motion in the district

court[1] to vacate the award on the grounds that one of the arbitrators had failed to disclose relationships allegedly showing evident partiality in favor of Piper Jaffray, that the dispute was not arbitrable, and that the panel had demonstrated a manifest disregard for the law. The motion was denied and the Kiernans appeal. We affirm.

After twenty years as a highly successful stock broker at Piper Jaffray, Jerald Kiernan suffered a cardiac arrest in January 1992 during which he experienced acute oxygen deprivation to the brain. The resulting brain damage left him with cognitive deficits in the areas of memory, learning ability, and executive functioning. One year later, his physician recommended that he return to work on a limited basis in order to try a team approach, in which other brokers would handle details and tasks in the areas where he experienced difficulty. Piper Jaffray allowed him to return to work in February 1993 with the assistance of his son, Andrew Kiernan, and to serve as an advisor to the brokers who had been working with his clients in his absence. After experimenting with this arrangement, Piper Jaffray decided that it was not working out and placed the Kiernans on leave at the end of April. During this time, they hired two neuropsychologists and a vocational rehabilitation specialist to evaluate Jerald Kiernan's ability to return to work in any capacity. On July 28, 1993, without notifying him, Piper Jaffray sent a letter to Kiernan's clients stating he was no longer capable of performing the essential functions of an investment executive and he would not be returning to Piper Jaffray. In October 1993 both Kiernans were hired by PaineWebber to work as a team of investment executives.[2]

---

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

[2]The parties disagree as to whether the Kiernans were fired or resigned after the letter was sent to Jerald Kiernan's clients; the Kiernans claim they were both terminated at the time, and Piper Jaffray claims that Jerald Kiernan remained on longterm disability status until he resigned to go to PaineWebber.

On February 17, 1994, the Kiernans filed an action in state court alleging violations of Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq. and the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363.01 et seq., defamation, breach of contract, and other state law claims. Around the same time,[3] they sought arbitration of these claims under NASD rules. The parties subsequently stipulated to a stay of the state court proceedings because they agreed to resolve the claims through NASD arbitration. On March 5, 1996, after fourteen days of hearings over five months, the arbitration panel denied relief to the Kiernans on all of their claims. The Kiernans applied to the panel for modification and correction of its award on the grounds that it had misapplied the burden of proof under the ADA and the MHRA and that it had failed to consider evidence relevant to determining the truth of the allegedly defamatory statement made in the Piper Jaffray letter. They did not, however, challenge the impartiality of the panel members. The application for modification was denied on May 1, 1996.

The Kiernans then filed a motion in the district court to vacate the arbitration award under the Federal Arbitration Act (FAA), 9 U.S.C. § 10(a)(2), claiming that one of the three arbitrators on the panel, Mary Powers, failed to investigate and disclose relationships which they alleged showed evident partiality in favor of Piper Jaffray. They contended that several of the directors, officers, and shareholders of Powers' employer (and its holding company) had relatives who had business relationships with Piper Jaffray and that she had a duty to disclose these relationships. Although they had

---

[3]There is some dispute about whether the claims were submitted for arbitration before or after the case was filed in state court. The Kiernans signed an NASD statement of arbitration claim on February 11, 1994 and an NASD submission agreement on February 16 and notified Piper Jaffray of their intent to submit the claims to arbitration on February 17. Because the submission agreement was not properly notarized, the NASD returned it to the Kiernans and it was not officially filed until sometime in March. Piper Jaffray filed its statement of answer with the NASD on April 12, 1994 and signed its own submission agreement on May 5, 1994.

learned about some of the relationships through Powers' amended disclosures to the parties before the arbitration award, they claimed that the NASD gave them no real choice but to allow her to remain on the panel. They also argued that the arbitration was void because they had never waived their right to bring their claims in court and because the panel's decision reflected a manifest disregard for the law.

Chief Magistrate Judge Franklin L. Noel issued a report and recommendation denying the motion which was adopted by the district court after a de novo review. The magistrate judge determined that the relationships cited for Powers were too tenuous to show evident partiality and that the Kiernans had waived this claim anyway by choosing to proceed with the arbitration with Powers on the panel. The magistrate judge also concluded that the Kiernans waived any limitation on the arbitrators' authority to decide the issues by voluntarily submitting all of their claims to arbitration and that there was no evidence the arbitrators knew and purposefully disregarded applicable law.

Ordinary standards of review apply on an appeal from an order declining to vacate an arbitration award, with conclusions of law reviewed de novo and any findings of fact reviewed for clear error. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-48 (1995).

The Kiernans argue on appeal that Powers did not disclose a close business relationship with a party to the arbitration and that this establishes evident partiality, warranting vacation of the arbitration award under 9 U.S.C. § 10(a)(2). See Commonwealth Coatings Corp. v. Continental Casualty Co., 393 U.S. 145, 147-50 (1968). They contend that under this court's decision in Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 51 F.3d 157, 159-60 (8th Cir. 1995), Powers was required to disclose her business associates' indirect ties with Piper Jaffray because the relationships in question "create[] an impression of possible bias." Id. (quoting Commonwealth Coatings, 393 U.S. at 149).

-4-

The Kiernans complain about two sets of indirect connections between Powers' employer, Sheffield Securities, its holding company Dublin Investments, and Piper Jaffray. The first involves Benjamin (Ben) Jaffray. Ben Jaffray's late uncle had helped found Piper Jaffray in 1913; he died in 1971. After the arbitration hearings closed but before the award, in early December 1995 the Kiernans read in an article in Corporate Report that Ben Jaffray had been one of the founders of Sheffield and that Powers was the chief operating officer (COO) and president of the firm. Powers had disclosed during the arbitration that she was affiliated with Sheffield, but none of the other details. The Kiernans' counsel, Daniel Boivin, wrote to the NASD about the article, and Powers provided an amended disclosure stating that Jaffray had served on the board of directors of Sheffield's holding company but had resigned on November 7, 1995,[4] that to her knowledge he was not and never had been associated with Piper Jaffray, and that these facts had not and would not affect her ability to be impartial.

After the amended disclosure, Boivin discussed the Kiernans' options under the circumstances with the assistant director of the NASD arbitration department and asked that the hearings be reopened in order to inquire into Powers' relationship with Ben Jaffray and to subpoena him for the same purpose. The NASD refused to grant these requests, but it allowed the Kiernans to submit written questions to Powers so that they could decide whether to object to her continuing to serve on the arbitration panel. Attached to the written questions was a July 1994 amendment to Sheffield's application to the Securities and Exchange Commission (S.E.C.) for broker-dealer registration which listed Jaffray as chairman and seventy five percent owner of Sheffield. They received Powers' responses on February 9, 1996. She explained that Sheffield did not become a licensed broker-dealer until December 21, 1994, the July amendment was corrected by a September 1994 amendment deleting Jaffray's name from the

---

[4]At the time he resigned from the board, Jaffray demanded immediate repayment of a $100,000 loan he had made to Dublin in September 1995, and in February 1996 he sued Dublin and Sheffield for repayment of the loan plus interest, costs, and attorney fees.

application, and Jaffray could not serve as an officer or employee of the firm because he was not properly licensed as a broker. Powers also disclosed that Ben Jaffray still owned seventeen percent of Dublin's stock despite his resignation from the board.

On February 13, 1996 Boivin wrote to the NASD, with a copy to Piper Jaffray's counsel, stating that in light of the options available under NASD rules the Kiernans had no alternative but to allow Powers to participate in the final decision. He explained that a substitute arbitrator was not practicable because several days of hearings had not been recorded due to a malfunction in the recording mechanism. He also stated that rearbitration with a new third arbitrator was not an option because of the time and legal expenses involved. Finally, the letter indicated the Kiernans would like Piper Jaffray to agree to have the remaining two arbitrators on the panel decide the issues, but if it would not do so, then Powers would have to remain and they would await the decision. On February 14, Piper Jaffray's counsel wrote to the NASD, with a copy to Boivin, indicating his understanding that the Kiernans had decided not to request Powers' removal from the panel and stating Piper Jaffray also had no such request. Boivin never responded to this letter, and the full panel went on to make its award.

The second set of relationships to which the Kiernans object involves the Mahoney family. Powers' amended disclosures indicated that Michael Mahoney had hired her as COO of Sheffield's predecessor in July 1993.[5] The July 1994 amendment to Sheffield's broker-dealer application, which the Kiernans obtained before the award,

---

[5]Appellants contend that during the arbitration Powers was not honest about her relationship to Sheffield because she merely stated she was affiliated with it and it was a newer, startup firm. They say it was really an old firm, incorporated in 1959, that had been renamed as Sheffield. Sheffield's predecessor, C.D. Mahoney, was founded by Joseph Mahoney's father, and Joseph served as its first president. It was deactivated in the 1970s, but Joseph's sons, Terrence and Michael Mahoney, sought broker-dealer registration with the S.E.C. for it in 1993-94 under the name of Sheffield Securities and organized Dublin Investments as a holding company for Sheffield. It was at this time that Powers was hired to be COO of Sheffield and joined the board of Dublin.

indicated that Terrence Mahoney had been a direct owner and executive officer of Sheffield. Subsequent investigation by the Kiernans' counsel revealed that Michael Mahoney, Terrence Mahoney, and Mary Powers were all at one time officers, managing directors, or shareholders in Dublin Investments, which was incorporated in Delaware in March of 1993 by Michael Mahoney. Michael and Terrence Mahoney are the sons of Joseph Mahoney, who was employed by Piper Jaffray for eleven years and did some consulting work for Piper from 1989 to 1994. Joseph Mahoney was also trustee for the Mahoney family trust's shares in Dublin Investments. Brian "Jim" Mahoney, the uncle of Michael and Terrence, was one of the four hundred and seven vice presidents at Piper Jaffray at the time of the arbitration. Michael Mahoney's former law firm had represented Piper Jaffray in a matter in 1990 for which it received $34,643 in legal fees, and he may have known Addison Piper, Chairman and CEO of Piper Jaffray, because he did legal work for Senator David Durenberger and Piper served as finance committee chair for the senator's reelection campaign.[6] Finally, Terrence Mahoney was a director of Palace Casinos, Inc., a company against which the Kiernans' attorneys had personally filed a lawsuit.[7] The Kiernans claim that Powers should have investigated and disclosed all of these relationships at the start of the arbitration.

Piper Jaffray argues that the Kiernans waived their claim of evident partiality by deciding to proceed with Powers on the panel after they became aware of many of these facts and raised their concerns with the NASD. Piper also notes that the Kiernans did not raise this claim when they asked the panel to modify and correct its award and that they did not conduct a more extensive investigation of Powers' associations until after they lost the arbitration on the merits. Even if not waived, Piper argues that the

---

[6]There is no evidence in the record indicating that Mahoney and Piper worked with the senator during the same period of time.

[7]The Kiernans argue that Terrence Mahoney was himself a defendant in the lawsuit, but he was not named as a defendant until May 25, 1996, after the arbitration panel made its award.

claim fails because the Kiernans have not identified any connection between Powers and Piper Jaffray that reasonably creates an impression of bias in Piper's favor. Piper contends that the Kiernans' reliance on <u>Olson</u> is misplaced because, unlike the arbitrator's firm in <u>Olson</u>, neither Sheffield nor Dublin has any business dealings with Piper Jaffrey. <u>See</u> 51 F.3d at 159-60. In addition, Piper argues that while Powers may have had a duty to disclose her own relatives' ties with the parties, she was not required to investigate or disclose the ties of relatives of her business associates. Finally, Piper notes that any business contacts between Powers' business associates and Piper Jaffrey are minimal and involve business ventures in which she was not a participant, such as Michael Mahoney's former law firm and Terrence Mahoney's position as a director of Palace Casinos.

The Kiernans waived their evident partiality claim by weighing their options at the time of Powers' amended disclosures and deciding to go forward with her on the panel. <u>See</u> <u>Cook Indus., Inc. v. C. Itoh & Co.</u>, 449 F.2d 106, 107-08 (2d Cir. 1971) (failure to object when party has knowledge of facts possibly indicating bias on part of arbitrator constitutes waiver of the objection). The Kiernans argue that they did not have enough information to have knowingly waived their objection to Powers and that the NASD gave them no other meaningful options. The names of Powers' business associates at Sheffield Securities and her position with the firm were available to the Kiernans before the arbitration award came down, however. Their counsel discussed the alternatives available to them with NASD staff. They had the opportunity to submit written questions to Powers regarding her associations and to conduct their own investigation of any individuals' ties to Piper Jaffray. While they did not have full knowledge of all the relationships to which they now object, they did have concerns about Powers' impartiality and yet chose to have her remain on the panel rather than spend time and money investigating further until losing the arbitration. Although Boivin's February 13 letter indicated that the Kiernans wanted Piper Jaffray to agree to a two person panel, they did not contradict the characterization of the letter given by Piper's counsel as a decision not to ask Powers to withdraw. The Kiernans cannot now

seek to avoid their tactical decision to await the decision of the three member panel rather than seek Powers' removal.  Cf. Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673, 683 (7th Cir. 1983) (relief from judgment confirming arbitration award under Fed. R. Civ. P. 60(b)(6) may not be granted where moving party's conduct evidences tactical response to having lost arbitration); Early v. Eastern Transfer, 699 F.2d 552, 558 (1st Cir. 1983) (as in arbitration cases, parties may not "keep two strings in their bow" by failing to raise bias objection to grievance committee at earliest opportunity).

The Kiernans also argue on appeal that the award should be vacated because Jerald Kiernan's ADA claim was not arbitrable under NASD rules and because of the legislative history of the ADA.  Appellants initiated the arbitration process in this case, and they cannot now argue, after receiving an unfavorable result, that the arbitration panel did not have the authority to decide the issues involved.  See Local 238 Int'l Bhd. of Teamsters, 66 F.3d 988, 990-91 (8th Cir. 1995); Ngheim v. NEC Elec., Inc., 25 F.3d 1437, 1440 (9th Cir. 1994).  The Kiernans' NASD statement of claim specifically included allegations of unlawful employment practices under the ADA, and this submission defines the authority of the arbitration panel "without regard to whether the parties had a prior legal obligation to submit the dispute."  Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers' Union, Local No. 1, 611 F.2d 580, 584 (5th Cir. 1980).

Appellants contend, however, that they did not voluntarily submit their claims for arbitration because Piper Jaffray's counsel had taken the position that arbitration of all employment disputes, including an ADA claim, was mandatory under the Uniform Application for Security Industry Registration which Jerald Kiernan had signed in 1983.   There is no evidence in the record of the discussions that took place between the parties regarding the arbitrability of the Kiernans' claims.  Even assuming that appellants' allegation is true, however, it does not affect their failure to preserve the arbitrability issue as a ground for vacating the panel's award.  Piper Jaffray never sought to compel arbitration either through the courts or before the arbitration panel

because the Kiernans never refused to arbitrate their claims.  Instead, they signed the NASD submission agreement, as did Piper Jaffray, and pursued the arbitration to a final binding decision, including applying to the panel for modification and correction of its award, without ever objecting to the arbitrability of any of their claims. They therefore cannot now avoid being bound by the panel's decision by claiming that their dispute was not arbitrable.  See Franklin Elec. Co. v. International Union, UAW, Local No. 1000, 886 F.2d 188, 192 (8th Cir. 1989); Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union, 760 F.2d 173, 175-76 (7th Cir. 1985).

Finally, appellants claim that the award should have been vacated by the district court because the panel manifestly disregarded Piper Jaffray's burden of showing that it was unable to accommodate Jerald Kiernan after he made out a prima facie case under the ADA.  See Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995).  In its award the panel stated "J[erald] Kiernan failed to meet his burden of proof that on July 28, 1993 he was able to perform the essential functions of account executive with reasonable accommodations while employed by Piper Jaffray."  Piper contends that this statement shows the panel correctly applied the law to the facts before it by placing the ultimate burden on Jerald Kiernan to show that he could perform the essential functions of an investment executive with or without reasonable accommodation.  See id. at 1113.

Judicial review of an arbitration award is extremely limited.  Beyond the grounds for vacation provided in the FAA, an award will only be set aside where "it is completely irrational or evidences a manifest disregard for law."  Lee v. Chica, 983 F.2d 883, 885 (8th Cir. 1993) (internal quotation marks and citations omitted).  Under this standard, arbitrators' interpretation of the law is insulated from review, but when they "understand and correctly state the law but proceed to disregard" it, manifest disregard may be shown.  Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 750 (8th Cir. 1986) (internal quotation marks and citations omitted).  The Kiernans

assert only that the "panel was unversed in the niceties of the burden of proof in civil rights actions," not that the panel knew the applicable legal standards and consciously chose to disregard them. Even though the panel did not discuss whether Piper Jaffray had met its burden of producing evidence that Kiernan could not perform the essential functions of an investment executive even with reasonable accommodation, it correctly placed the ultimate burden of persuasion on Kiernan to show that he suffered unlawful discrimination. See Benson, 62 F.3d at 1112 (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 516 (1993)). Regardless of the wisdom of the panel's conclusion, it in no way demonstrates a manifest disregard for the law warranting vacation of the arbitration award in this case.

Accordingly, the order denying the motion to vacate the arbitration award is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-