**HSMV CORPORATION, Petitioner,**

v.

**ADI LIMITED, Respondent.**

**No. CV 99–08036ABC(MCX).**

United States District Court,
C.D. California.

Nov. 8, 1999.

Steven L. Sloca, Graham L.W. Day, Irell & Manella, Los Angeles, CA, Santa Monica, CA, for petitioner.

Martin J. Trupiano, Graham & James, Los Angeles, CA, for respondent.

ORDER RE: PETITIONER HSMV CORPORATION'S MOTION TO VACATE ARBITRATION AWARD

COLLINS, District Judge.

Petitioner HSMV Corporation's ("HSMV") Motion to Vacate Arbitration Award (the "Motion") came on regularly for hearing before this Court on November 8, 1999. After reviewing the materials submitted by the parties, argument of counsel, and the case file, it is hereby ORDERED that HSMV's Motion is GRANTED.

## I. Background

### A. The Arbitration Agreement

HSMV, a California based company, and Respondent ADI Limited ("ADI"), an Australia based company wholly owned by the Commonwealth of Australia (the "Commonwealth"), are parties to a series of agreements concerning the manufacture and delivery of all-terrain military vehicles called "Flyer" vehicles for HSMV's customer, the Government of Singapore. In May 1996, HSMV entered into an agreement with the Government of Singapore for the supply of 29 Flyer vehicles. On May 24, 1996, HSMV and ADI entered into their first "Back to Back Agreement" relating to those vehicles. In March 1998, HSMV and the Government of Singapore entered into another agreement for the supply of 50 additional Flyer vehicles.

Disputes arose in connection with the first Back to Back Agreement. On November 7, 1998, HSMV and ADI resolved these disputes by entering into a settlement agreement (the "1998 Settlement"). Around the same time, the parties were negotiating their second Back to Back Agreement relating to the manufacture of the additional 50 Flyer vehicles. A part of this proposed second Back to Back Agreement was the addition of an arbitration provision.

On November 11, 1998, ADI's counsel sent Edebeatu Ibekwe ("Ibekwe"), HSMV's counsel, a draft of the new agreement listing the names of two proposed arbitrators: Geoffrey Gibson ("Gibson") of the law firm Blake Dawson Waldron ("Blake Dawson") and Professor Michael Pryles of the law firm Minter Ellison. Shortly thereafter, ADI's counsel forwarded Ibekwe a copy of each proposed arbi-

trator's CV.[1] While HSMV had an opportunity to do so, neither Ided Nechushtan ("Nechushtan"), President of HSMV, nor Ibekwe investigated the backgrounds of Gibson or Professor Pryles. Nor did HSMV propose the addition of any other potential arbitrators. Ibekwe claims that he had "no reason to doubt their credentials" because both proposed arbitrators were partners in major Australia law firms. *Id.*, Ex. G at 40.[2]

On November 18, 1998, HSMV and ADI entered into their second Back to Back Agreement (the "Agreement") and agreed to arbitrate all disputes arising out of or relating to the Agreement. *See* Ibekwe Decl., Ex. 1 at 27 (Section 6.3 re "Resolution of disputes") & 55–56 ("Exhibit F—Interim Dispute Resolution Procedures"). The arbitration procedures are set forth in Exhibit F of the Agreement (the "Procedures"). The Procedures provide that either party may initiate arbitration by delivery of a Claim Letter "to an arbitrator chosen by such party from the mutually approved list of arbitrators attached hereto...." *Id.* at 55. The Procedures also guarantee a prompt hearing—within seven business days following the arbitrator's receipt of the Claim Letter—and prompt decision—within 24 hours of the conclusion of the hearing. *Id.* The parties agreed to conduct the arbitration in (1) Melbourne, Australia, if the delivery of the Claim Letter occurs between November and April or (2) Los Angeles, California, if the delivery of the Claim Letter occurs between May and October. *Id.* at 56.

In furtherance of the parties' agreement that "the sole purpose of the foregoing arbitration provision is to afford the parties an expeditious method of resolving the claims covered hereby so the Work can continue without interruption and any liquidated sum owing can be paid," the parties also agreed that "no monetary damages may be awarded in any such arbitration" and "the determination of the

arbitrator shall not be collateral estoppel or res judicata in any action for damages." *Id.* Thus, under the Agreement, the only relief an arbitrator can award is injunctive relief "as necessary to prevent further breach." *Id.* at 55. Thereafter, "[a]ny party to the arbitration may petition *any court of competent jurisdiction* to confirm the arbitrator's determination as a binding arbitration award *in accordance with applicable law.*" *Id.* (emphasis added). The Agreement contains no choice of law provision.

In April 1999, ADI initiated the first arbitration proceeding and selected Gibson as the arbitrator. On May 10, 1999, after a hearing in Melbourne, Australia, Gibson ruled in HSMV's favor. On May 25, 1999, HSMV initiated the second arbitration proceeding. HSMV selected Gibson as the arbitrator on the theory that he was familiar with the facts of the parties' relationship (and presumably since his prior ruling was favorable to HSMV). Claiming that ADI had breached the Agreement, HSMV sought an injunction requiring ADI, *inter alia,* to ship to HSMV all parts purchased or ordered but not yet installed, to redirect all future parts to HSMV for use by its new supplier, to provide all technical assistance to effect transition to the new supplier and to refrain from discussing HSMV products with the Government of Singapore. *See* Trupiano Decl., Ex. M at 75–77. HSMV also sought restitution. *Id.* at 77. On June 7, 1999, the arbitration was held in Los Angeles, California. Gibson issued an award in favor of ADI (the "Arbitration Award") on the same day.

**B. Notice of Blake Dawson's Representation of the Commonwealth**

In early 1998, in connection with the Commonwealth's efforts to privatize ADI, ADI repeatedly requested that HSMV consent to the disclosure of the various agreements between HSMV and ADI to

---

1. Gibson's CV indicates that he is a partner at Blake Dawson. *See* Trupiano Decl., Ex. L.

2. References to exhibit page numbers shall refer to the page numbers the parties added in accordance to Local Rule 3.6.2.

the Commonwealth, its advisors and prospective buyers. *See* Barrett Decl., Exs. A–C. In June 1998, Ibekwe advised ADI that HSMV would consent to the disclosure of certain of the agreements if (1) ADI provided HSMV with an acceptable confidentiality deed (a form of non-disclosure agreement) signed by the party to whom any such disclosure is to be made and (2) such deed granted HSMV the right to enforce the confidentiality provisions against those third parties. *Id.,* Ex. D.

On October 1, 1998, an agency of the Commonwealth forwarded a copy of the proposed confidentiality deed to Nechushtan. The last sentence of the two page cover letter stated that:

> Should you have any queries, please call me on 61 2 6208 9114. Mr. Bill Conley of Blake Dawson Waldron (61 2 6234 4017) can assist in respect of the confidentiality arrangements.

Trupiano Decl., Ex. H. On the bottom center of the confidentiality deed's cover page, "BLAKE DAWSON WALDRON," its address and telephone number are referenced. *Id.* No other references are made to Blake Dawson.

Sometime thereafter, either in October or early November 1998, Nechushtan forwarded the documents to Ibekwe without reading them. Ibekwe recalls reviewing these documents. However, he claims that he did not pay much attention to them and did not notice references to Blake Dawson because the privatization of ADI and confidentiality deed issues were not "front-burner" issues for HSMV. *Id.,* Ex. G at 20–21. At the time, he and HSMV had "more important things" to deal with—*i.e.,* the negotiation of the 1998 Settlement and the Agreement. *Id.* at 21; Day Decl., Ex. 1 at 11–13.

After the June 7, 1999 arbitration, Baring Brothers, the financial adviser to the Commonwealth, requested that it be allowed to disclose ADI's agreements with

HSMV to prospective buyers of ADI. Ibekwe Decl., ¶ 7. In response, HSMV asked that it be provided with a confidentiality deed signed by those parties. *Id.* On June 18, 1999, the Sydney office of Blake Dawson[3] forwarded the requested confidentiality deeds to Ibekwe. The one paragraph letter contained a reference heading to "Sale of ADI Ltd" and stated:

> We refer to your facsimile of 13 June 1999 to Jeff White. As requested please find attached copies of confidentiality deeds for: [three prospective buyers]. we look forward to your response.

Trupiano Decl., Ex. O. According to Ibekwe, "[i]t was only after receiving this [letter] that HSMV and I became aware that Blake Dawson Waldron—the firm in which [Gibson,] the arbitrator ... is a partner—had, at all relevant times, been representing the Commonwealth in its attempts to sell ADI, and that such representation commenced before HSMV and ADI entered into the Back to Back Agreement." Ibekwe Decl., ¶ 8. On June 29, 1999, Ibekwe wrote to Gibson advising him of HSMV's recent discovery of Blake Dawson's connection with ADI: "This fact was not disclosed to HSMV by ADI, [its counsel] Deacons Graham & James or your firm.... Had HSMV been appraised of this fact, it would not have elected to proceed with the arbitration with you as the panel." *Id.,* Ex. 2. Ibekwe requested that Gibson set aside his arbitration decision. *Id.* Gibson declined to do so. On July 1, 1999, Gibson explained that he had no knowledge of his firm's involvement in the sale of ADI: "I can give you an unqualified assurance that I was not aware of any relationship between any part of this firm and ADI when either award was made and that accordingly any such relationship could have had no effect on any part of my conduct in either of the arbitrations...." *Id.,* Ex. 3.[4]

---

**3.** Gibson works out of the Melbourne office.

**4.** In a subsequent letter, Gibson stated that he first learned of relationship "on about 28

June 1999 .... in the course of a discussion with a partner from our Canberra office." Trupiano Decl., Ex. R.

On July 16, 1999, HSMV filed a Petition to Vacate Arbitration Award pursuant to Cal.Civ.Proc.Code § 1280 *et seq.* in Los Angeles County Superior Court (Case No. BS 058229). On August 6, 1999, ADI removed the action to this Court. On August 11, 1999, ADI filed an Answer to HSMV's Petition. On August 22, 1999, ADI filed a Counter–Petition for Confirmation of Arbitration Award under 9 U.S.C. § 207. On September 29, 1999, HSMV filed the Motion. On October 19, 1999, ADI filed its Opposition. On October 25, 1999, HSMV filed its Reply.

## II. Discussion

### A. Removal Jurisdiction

This matter is before the Court on the basis of removal jurisdiction. ADI removed the case from state court alleging that this Court has removal jurisdiction. ADI claims that HSMV's Petition to Vacate originally could have been brought in federal court pursuant to: (1) 28 U.S.C. § 1331 (federal question) because the matter falls within the scope of the Convention on the Recognition and Enforcement of International Arbitral Awards, 9 U.S.C. § 201 *et. seq.*, (the "Convention"); (2) the Foreign Sovereign Immunities Act ("Immunities Act"), 28 U.S.C. §§ 1330 and 1602 *et seq.*, because the Petition to Vacate concerns an action against an entity whose majority of shares are owned by a foreign state; and (3) 28 U.S.C. § 1332 (diversity) because this is an action between citizens of different states and the amount in controversy exceeds $75,000. Notice of Removal at 2–5. Although HSMV does not contest ADI's claim that this Court has subject matter jurisdiction over this action, the Court must address the basis for jurisdiction to determine whether state law, the Federal Arbitration Act ("FAA")[5] or the Convention supplies the applicable procedural and substantive law for the Motion.[6]

To determine removal jurisdiction based on a federal question, the Court may examine only the complaint or petition as it existed at the time of the removal. *See* William W. Schwarzer, *et al., Federal Civil Procedure Before Trial,* § 2:697–2:701 (1999). However, the Court may examine the complaint, other pleadings, the removal notice or other papers to ascertain whether a case is removable on diversity grounds. *See id.* at § 2:654. Here, after reviewing HSMV's Petition to Vacate, the Court concludes that the only basis for removal jurisdiction is 28 U.S.C. § 1330.

28 U.S.C. § 1330(a) provides that the district courts have "original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) ... as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity." 28 U.S.C. § 1330(a). Under § 1603, a "foreign state" is defined to include an entity whose majority shares "[are] owned by a foreign state or political subdivision thereof." 28 U.S.C. § 1603(a)–(b). A federal court may exercise subject matter jurisdiction under § 1330(a) only " '[i]f one of the specified exceptions to sovereign immunity applies.' " *Security Pacific Nat'l Bank v. Derderian,* 872 F.2d 281, 283 (9th Cir. 1989).

In this case, ADI concedes that it is a "foreign state" under the Immunities Act because it is wholly owned by the Commonwealth. While ADI alleges the applicability of § 1330(a), it does not explain which exception applies to trigger jurisdiction. After examining the exceptions set forth in 28 U.S.C. § 1605(a), the Court finds that this is an action "in which the foreign state has waived its immunity

---

5. Hereinafter, the Court's use of "FAA" references Chapter 1 of the Federal Arbitration Act, 9 U.S.C. §§ 1–11, and the "Convention" references Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.*

6. Neither party addresses this issue. Instead, HSMV simply argues that it is entitled to have the Arbitration Award set aside under either California law, FAA or the Convention. ADI's opposition does not even mention the Convention, presumably conceding that the Convention is not applicable.

either explicitly or by implication." 28 U.S.C. § 1605(a)(1).[7] Implicit waivers are found when " '(1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that a contract is governed by the law of a particular country; and (3) a foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity.' " *Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect,* 89 F.3d 650, 655 (9th Cir.1996). Here, ADI implicitly waived any sovereign immunity claim by (1) its agreement to arbitrate in Los Angeles and (2) its failure to raise the sovereign immunity defense in its Answer. Therefore, the Court has jurisdiction under § 1330(a) to entertain this action.[8]

## B. Evident Partiality

The FAA governs the enforcement and validity of contractual arbitrations arising out of contracts affecting interstate or foreign commerce. *Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 270–73, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).[9] 9 U.S.C. § 10 establishes the relevant standard for a court to vacate an arbitration award. Among other grounds, § 10(a) provides that the award may be set aside "[w]here there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2). Here, HSMV alleges that Gibson's failure to disclose his firm's representation of the Commonwealth establishes the "evident partiality" basis for setting aside the Arbitration Award.

In *Commonwealth Coatings Corp. v. Continental Cas. Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), a supposedly neutral arbitrator failed to disclose the fact that he and one of the parties to the arbitration had an ongoing and significant business relationship. The Supreme Court vacated the arbitration award on the ground that there existed "evident partiality" in the arbitrator. *Id.* at 338. The Court held that the arbitrator had a duty "to disclose to the parties any dealings that might create an impression of possible bias." *Id.* at 339. More recently, in *Schmitz v. Zilveti,* 20 F.3d 1043 (9th Cir. 1994), a nondisclosure case involving an arbitrator who had no actual knowledge of a conflict, the Ninth Circuit held that a party's failure to investigate potential conflicts of interest may result in a "reasonable impression of partiality under *Commonwealth Coatings.*" *Id.* at 1049.

In *Schmitz,* the parties agreed to arbitrate their dispute in accordance with the

---

**7.** 28 U.S.C. § 1605(a)(6) also provides an exception where the action is brought either to enforce an agreement to arbitrate or to confirm an arbitration award. However, this exception is not applicable since HSMV initiated the action to vacate an arbitration award.

**8.** Neither diversity of citizenship nor the Convention provides a basis for removal jurisdiction. First, the Immunities Act "is the exclusive source of subject matter jurisdiction over suits involving foreign states and their instrumentalities." *Corporacion Mexicana,* 89 F.3d at 653; *accord Universal Consolidated Companies, Inc. v. Bank of China,* 35 F.3d 243, 246 (6th Cir.1994) (the Immunities Act "eliminate[s] actions against foreign states from the scope of diversity jurisdiction"). Second, HSMV's Petition to Vacate could not have been initiated under 9 U.S.C. § 201 *et seq.,* which implemented the provisions of the Convention into domestic law. The Convention contains no provision that expressly permits a losing party to initiate suit to vacate an award

that would otherwise fall under the scope of the Convention. Alan Scott Rau, The New York Convention in American Courts, 7 Am. Rev. Int'l Arb. 213, 234–35, 257 & n. 20 (1997); *see* 9 U.S.C. § 201, notes (reprint of the Convention). As drafted, the Convention provides a mechanism for winning parties to initiate a proceeding to confirm arbitration awards and sets forth grounds by which a court may refuse to recognize or enforce the award. *See* 9 U.S.C. § 201, notes (Articles IV and V of the Convention). Because the Court finds that HSMV could not have initiated this action against ADI under the Convention, the Court cannot assert removal jurisdiction on this basis.

**9.** In its moving papers, HSMV briefed California law due to its erroneous belief that the Court has diversity jurisdiction. *See* Motion at 9 n. 5. The Court finds that California law parallels federal law in all relevant respects. Where necessary, the Court discusses California law to the extent that it is consistent with federal law.

National Association of Securities Dealers ("NASD") arbitration procedure ("NASD Code"). *Id.* at 1044. The NASD Code required each arbitrator to disclose relationships that might affect impartiality or create an appearance of bias. *Id.* One of the parties to the arbitration was Pru–Bache. The lawyer-arbitrator failed to disclose that his law firm had represented Prudential Insurance Co., the parent company of Pru–Bache, numerous times over a 35 year period. *Id.* The arbitrator was not aware of the firm's representation of Prudential because he only ran a conflict check for Pru–Bache. *Id.* Nevertheless, the Court held that the arbitrator's failure to disclose the conflict warranted the vacation of the award under 9 U.S.C. § 10(a)(2). *Id.* at 1049.

In reaching its holding, the *Schmidt* Court rejected the argument that the arbitrator's lack of knowledge precluded a finding of evident partiality. The court

explained that "though lack of knowledge may prohibit actual bias, it does not always prohibit a reasonable impression of partiality." *Id.* at 1048.[10] Where an arbitrator has an independent duty to investigate, a violation of this duty "may result in a failure to disclose that creates a reasonable impression of partiality." *Id.*[11] Because a conflict existed and the arbitrator violated his duty to investigate under the NASD Code, the court found a reasonable impression of partiality. *Id.*

■ *Schmitz* is controlling.[12] Here, Gibson's law firm's contemporaneous representation of ADI's owner clearly presented a conflict of interest. The question is whether Gibson had a duty to investigate independent of his *Commonwealth Coatings* duty to disclose. The Court concludes that such a duty existed under applicable California and Australian arbitration rules.[13]

10. "In an actual bias case, a court must find actual bias. Finding a 'reasonable impression' of partiality is not equivalent to, nor does it imply, a finding of actual bias. Otherwise, the *Commonwealth Coatings* court could not have held that a reasonable impression of partiality was present when no actual bias was shown." *Id.* at 1047. Because this is not an actual bias case, evidence of Gibson's impartiality—*e.g.*, his ruling in favor of HSMV in the parties' first arbitration—to show lack of evident partiality in the second arbitration is irrelevant. *See* Opp. at 9 & 18.

11. The Court further stated: "If the parties are to be judges of the arbitrators' partiality, duties to investigate and disclose conflicts must be enforced, even if later a court finds that no actual bias was present.... We therefore decline to adopt a per se rule that no reasonable impression of partiality can be found absent a showing that the arbitrator knew the facts on which it is based." *Id.* at 1049.

12. ADI argues at length that under federal law, " 'evident partiality' cannot arise when an arbitrator is unaware of the conflict." Opp. at 16. However, as HSMV correctly notes, there exists a split of authority in the federal courts with respect of whether an award may be vacated on the ground of "evident partiality" from nondisclosure when the arbitrator lacked knowledge of the conflict

but failed to investigate. *See* Reply at 15. To the extent that they are in conflict with the *Schmidt* standard, the Court rejects the line of non-Ninth Circuit cases cited by ADI. *See* Opp. at 15–17; *see, e.g., ANR Coal Co., Inc. v. Cogentrix of N. Carolina,* 173 F.3d 493, 499–500 (4th Cir.1999) (expressly distinguishing *Schmitz*); *Al–Harbi v. Citibank, N.A.,* 85 F.3d 680, 682–83 (D.C.Cir.1996) (same); *Peoples Security Life Ins. Co. v. Monumental Life Ins. Co.,* 991 F.2d 141 (4th Cir.1993) (pre-*Schmitz*).

*Peoples Security* is also distinguishable on the ground that it involves allegations of evident partiality from actual bias rather than mere failure to disclose. *See* 991 F.2d at 142 & 146. The Ninth Circuit has determined that "both the facts and factual analyses [sic] of those [actual bias] cases are inapposite to the instant nondisclosure case." *Schmitz,* 20 F.3d at 1047.

Moreover, the Court rejects ADI's contention that the ruling in *Schmitz* is limited to cases involving duties imposed by the NASD Code. Opp. at 17–18. The NASD Code is simply one of various sources that may impose upon arbitrators an "independent duty" to investigate. *See Schmitz,* 20 F.3d at 1048.

13. Because the parties' Agreement is silent on this issue, the Court looks to the laws of California and Australia, the two jurisdictions for arbitration identified in the Agreement.

■ First, the California International Arbitration and Conciliation Act (the "CIA Act"), Cal.Civ.Proc.Code § 1297.11 *et seq.*, imposes a duty upon arbitrators to disclose conflicts of interest. The CIA Act applies to "international" commercial arbitrations that take place in California. Cal.Civ. Proc.Code § 1297.11. The Court has no doubt that the arbitration between HSMV and ADI constitutes an "international" commercial arbitration within the scope of the CIA Act.[14]

Under the CIA Act, "all persons whose names have been submitted for consideration for appointment or designation as arbitrators ... or who have been appointed or designated as such" must disclose various information that "might cause their impartiality to be questioned." Cal. Civ.Proc.Code § 1297.121. Such information includes, but is not limited to, "an interest that could be substantially affected by the outcome of the proceeding." *Id.* This duty to disclose is on-going: From the time of appointment through the end of the arbitration, the arbitrator shall disclose "any circumstances referred to in Section 1297.121 which were not previously disclosed." Cal.Civ.Proc.Code § 1297.123.

Second, the United Nations Commission on International Trade Law's Model Law on International Commercial Arbitration ("Model Law"), which Australia has adopted, imposes the same duty. *See* McClellan Decl.,[15] ¶¶ 6–7 & Ex. 2 at § 3.2.[16] Article 12 of the Model Law provides, in pertinent part:

> When a person is approached in connection with his possible appointment as an arbitrator, he shall disclose any circum-

stances likely to give rise to justifiable doubts as to his impartiality. An arbitrator, from the time of his appointment and throughout the arbitral proceedings, shall without delay disclose any such circumstances to the parties unless they have already been informed of them by him.

United Nations Comm'n on Int'l Trade Law: Model Law on Int'l Commercial Arbitration, Art. 12, reprinted at 24 I.L.M. 1302, 1305 (1985); *see* McClellan Decl., Ex. 2 at § 4.2.

■ While neither the CIA Act nor the Model Law expressly provides that the arbitrator must "investigate" whether he has any of the questionable relationships and/or interests, the Court concludes that the disclosure requirement imposed by both rules necessarily implicates a duty to investigate whether instances of potential conflict exist. Under either rule, an arbitrator is obligated to conduct a conflicts check to see if he must disclose any circumstances that might cause his impartiality to be questioned. It is undisputed that Gibson failed to do so.

■ Third, the Court finds that Gibson, as a lawyer, had a duty to investigate whether a conflict may exist prior to his engagement as the sole "neutral" arbitrator in this dispute. The Ninth Circuit has recognized that an arbitrator who is also a lawyer may have an independent duty to investigate possible conflicts of interest. The *Schmidt* Court cited *Close v. Motorists Mut. Ins. Co.*, 21 Ohio App.3d 228, 486 N.E.2d 1275 (1985) with approval as an example of a case (not involving the NASD

---

14. An arbitration is considered "international" if (1) the parties have their places of business in different countries at the time of the arbitration agreement; (2) the subject matter of their dispute is closely connected with a third country; (3) a substantial part of the parties' agreement is to be performed in a third country; (4) the parties have designated California as the place of arbitration; (5) the subject matter of the arbitration is related to commercial interests in more than one country. H. Warren Knight, *et al., California Practice Guide: Alternative Dispute Resolution,*

§ 5:553 (1988) (discussing Cal.Civ.Proc.Code § 1297.13).

15. ADI raises no objection to HSMV's submission of expert declarations, including the Declaration of Geoff McClellan.

16. Again, there is no doubt that arbitration at issue constitutes an "international commercial arbitration" covered by the Model Law. *See id.,* Ex. 2 at 78 (discussion of definition in Article 1(3)).

Code) where "the parties can expect a lawyer/arbitrator to investigate and disclose conflict." *Schmitz*, 20 F.3d at 1048.

In *Close*, the Ohio Court of Appeals vacated an arbitration award on the ground that evident partiality existed where the lawyer-arbitrator failed to disclose his law firm's on-going representation of one of the parties. 21 Ohio App.3d at 230, 486 N.E.2d 1275.[17] The court was not persuaded by the argument that there could be no evident partiality where the arbitrator had no knowledge of the conflict. Noting that the arbitrator, in his role as a lawyer, routinely conducts a conflicts check when taking on new clients, the *Close* Court held that "the same duty is owed to the parties to an arbitration." *Id.* "In deciding this case, we emphasize the duty of inquiry and disclosure. When such is done, any possible conflict can be resolved by the parties prior to hearing. Thus resort to the courts is obviated, and this is, after all, the purpose of arbitration." *Id.*

 In sum, the Court finds that Gibson had a duty "to make a reasonable effort to inform himself of his firm's representation" of the Commonwealth in its efforts to privatize ADI. *Schmitz*, 20 F.3d at 1049. "A violation of this independent duty to investigate may result in a failure to disclose that creates a reasonable im-

pression of partiality under *Commonwealth Coatings.*" *Id.* at 1048.[18]

### C. Waiver

 That Gibson had a duty to investigate and a duty to disclose is not the end of the Court's inquiry. Here, ADI argues that HSMV was on notice of the conflict of interest and waived its right to object to the alleged appearance of partiality. ADI contends that HSMV received actual notice of Blake Dawson's involvement in the privatization of ADI from the October 1, 1998 letter and the attached Confidentiality Deed. ADI further contends that HSMV subsequently waived the conflict by selecting Gibson, a partner at Blake Dawson, to arbitrate the disputes.[19] Motion at 12–14. While the Court is not without sympathy for ADI's position, the Court rejects ADI's argument that HSMV waived the conflict of interest.

The facts of this case show that a diligent review of the documents forwarded by the Commonwealth might have prevented this dispute.[20] Ibekwe, the lawyer who represented HSMV at all relevant times, was involved in the 1998 Settlement; he knew about the sale of ADI; he negotiated and co-drafted the Agreement; he handled the Commonwealth's requests for consent to disclose agreements between ADI and HSMV; and he agreed to the

---

17. *Close* involved a petition to vacate under Rhode Island law. The Rhode Island statute tracks the language of 9 U.S.C. § 10(a). *See id.* at 229–30, 486 N.E.2d 1275. The Ohio court also followed *Commonwealth Coatings. Id.* at 230, 89 S.Ct. 337.

18. ADI argues, without any legal support, that HSMV and its counsel had a duty to investigate whether Gibson might have a conflict of interest. Opp. at 14. This argument has no merit. No authority supports the proposition that Gibson can shift his affirmative duty to investigate and disclose to HSMV and/or its counsel, even under the facts of this case.

19. ADI offers other additional "evidence" to show that HSMV and its counsel had actual knowledge of the conflict, including (1) the remark in ADI's letter to Ibekwe stating that it relied on the advice of counsel in submitted

the suggested arbitrators (Opp. at 6); (2) the introductory paragraph in Gibson's CV indicating he has represented government clients and has expertise in administrative law (*Id.*); and (3) Nechustan and Ibekwe's testimony that they heard or saw "something" during the first arbitration proceeding held at Gibson's law office (Opp. at 6). The Court finds none of this purported evidence supports ADI's claim.

20. Nechushtan, like many clients represented by counsel, counted on his lawyer to pay attention to detail. The Court accepts the uncontroverted evidence that Nechushtan was not aware of Blake Dawson's involvement in the privatization of ADI and he did not review the October 1, 1999 letter and the Confidentiality Deed before forwarding them to Ibekwe. *See, e.g.,* Trupiano Decl., Ex. F at 9–10, 14–15.

selection of Gibson. Had Ibekwe paid more scrupulous attention to the pertinent documents prior to the two arbitrations, perhaps he would have realized that Gibson's law firm was involved in the privatization of ADI. Unfortunately, he did not. Thus, HSMV did not discover the conflict until after the second arbitration.

However, the record at best shows that a careful study of the documents forwarded to HSMV could have revealed Blake Dawson's relationship with the owner of ADI. But that is not sufficient to support a finding that HSMV waived the conflict of interest. "Clearly, as a threshold matter one must know of, understand and acknowledge the presence of a conflict of interest before one can" waive the conflict. *Gilbert v. Nat'l Corp. for Hous. Partnerships*, 71 Cal.App.4th 1240, 84 Cal.Rptr.2d 204 (1999) (on disqualification of lawyer). The record simply does not demonstrate that HSMV actually knew, understood and acknowledged the presence of a conflict before the conclusion of the arbitration proceedings.[21]

*Kaiser Found. Hospitals, Inc. v. Superior Court*, 19 Cal.App.4th 513, 23 Cal. Rptr.2d 431 (1993), cited by neither party, is instructive. In *Kaiser*, the losing party (Coburn) moved to vacate the arbitration award after discovering that the arbitrator failed to disclose his past services for Kaiser, the other party to the arbitration. Kaiser argued that Coburn had actual knowledge of the arbitrator's relationship with Kaiser and waived any objection to the appointment. *Id.* at 515, 23 Cal. Rptr.2d 431. Specifically, Kaiser relied on a letter sent by its counsel to Coburn's counsel to show it had given actual notice of the possible conflict. *Id.* at 515–16, 23 Cal.Rptr.2d 431. The letter stated:

> I note that Judge Drummond has been selected by our party arbitrators as the neutral arbitrator. My client and myself will accept him as the neutral in this matter. This is true even though he has sat as a claimant's party arbitrator in other cases against my client, as a neutral in other cases and even as a party arbitrator on behalf of my client.

*Id.* at 516, 23 Cal.Rptr.2d 431 (quotations omitted). The trial court rejected Kaiser's waiver argument and explained why the letter was "insufficient to obviate the impression of bias." *Id.* at 516, 23 Cal. Rptr.2d 431.

> I really believe that the duty to disclose comes from the neutral arbitrator and I have to consider here the implications of what happened on the process of arbitration in general. [¶] If the courts allow opposing counsel to claim disclosure by a phrase in a letter, that doesn't really disclose anything except that he was a party arbitrator and the courts hold that that relieves the neutral arbitrator of all responsibility of disclosure, then I think we are inviting an awful lot of unfairness in the system.

---

**21.** Because the cases cited by ADI in support of waiver are all distinguishable in this regard, ADI's reliance on them is misplaced. *See Cook Indus., Inc.*, 449 F.2d 106, 107 (2d Cir.1971) (finding that "appellant was fully aware at the time of the submission to arbitration of the relationship between appellee and [the arbitrator]"); *Kiernan v. Piper Jaffray Companies, Inc.*, 137 F.3d 588, 591–93 (8th Cir.1997) (arbitrator disclosed certain affiliations prior to the arbitration pursuant to NASD rules; believing that a conflict may exist, counsel requested that the NASD arbitration department allow him to inquire further into the arbitrator's relationships; after further disclosures were made, counsel advised the NASD that his clients had concerns about the arbitrator's impartiality but for various reasons decided not to request the arbitrator's removal); *Sheet Metal Workers Int'l Assoc. Local Union # 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745–46 (9th Cir. 1985) (actual bias case) (the potential conflicting interests of the arbitration board's management representatives "were known to the parties prior to the hearing"); *Int'l Standard Elec. Corp. v. Bridas Sociedad Anonima Petrolera Indus. Y Comercial*, 745 F.Supp. 172, 180 (S.D.N.Y.1990) (under the Convention) (the arbitration panel advised the parties that it intended to appoint a secret expert; after failing to object to the panel's non-disclosure of the expert's name, ISEC cannot avoid confirmation of the award on the ground that its rights were subverted by the use of a "secret expert").

*Id.* at 515, 23 Cal.Rptr.2d 431. The Court of Appeal affirmed.

Here, as in *Kaiser,* the Court recognizes that "the consequences of [the arbitrator's] failure to disclose may be overcome if the pertinent facts are actually revealed, or otherwise become known, to the parties in some other fashion." *Id.* at 517, 23 Cal. Rptr.2d 431. However, the brief references to Blake Dawson in letters by a third (albeit related) party to HSMV, sent to HSMV in connection with another matter more than a month before the parties designated potential arbitrators and more than six months before Gibson was first selected as an arbitrator to preside over a dispute, do not overcome the consequences of Gibson's failure to disclose.

In sum, Gibson had a duty to investigate whether a possible conflict existed. He "did nothing to fulfill that duty." *Schmitz,* 20 F.3d at 1049. That he was not asked by the parties to run a conflict check or had forgotten to conduct a check is not an excuse. *See id.* at 1048. Thus, although he lacked actual knowledge, Gibson had constructive knowledge of his firm's contemporaneous representation of ADI's owner. *See id.* "Given [Gibson's] constructive knowledge and the presence of conflict, [Gibson's] failure to inform the parties to the arbitration resulted in a reasonable impression of partiality under *Commonwealth Coatings.*" *Id.* (citing *Close,* 21 Ohio App.3d at 229–30, 486 N.E.2d 1275).

### III. Conclusion

For all of the reasons set forth above, the Court hereby GRANTS HSMV's Motion to Vacate Arbitration Award.

**SO ORDERED.**