Harold NORDLICHT, on behalf of
himself and all others similarly
situated, Plaintiff-Appellant,

v.

NEW YORK TELEPHONE COMPANY,
Defendant-Appellee.

No. 1372, Docket 86–7218.

United States Court of Appeals,
Second Circuit.

Argued May 27, 1986.

Decided Aug. 25, 1986.

Robert E. Frey, New York City (Herbert I. Deutsch, Deutsch & Frey, New York City, on brief), for plaintiff-appellant.

Walter C. Reid, New York City (John M. Clarke, Gerald M. Oscar, Saul Scheier, New York City, on brief), for defendant-appellee.

Before FEINBERG, Chief Judge, NEWMAN and KEARSE, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal primarily concerns the lawfulness of charges of the defendant-appellee New York Telephone Company (NYTel) for phone calls that originate outside the United States and are billed to NYTel credit cards. The appeal also presents the issue, rarely litigated, whether federal jurisdiction over a claim arising under federal common law is exclusive. Harold Nordlicht appeals from a judgment of the District Court for the Southern District of New York (Charles S. Haight, Jr., Judge), 617 F.Supp. 220, dismissing, on cross-motions for summary judgment, his claims for money had and received and fraud. Nordlicht also challenges the District Court's

denial of his motion to remand the case to state court. For reasons that follow, we affirm.

## I. Background

This appeal concerns two types of phone calls: calls made from one location in Canada to another location in Canada (the "intra-Canada calls") and calls made from Canada to the United States (the "international calls"). Nordlicht made both types of phone calls and charged them by use of a credit card issued by NYTel. Nordlicht alleges that, with respect to both types of calls, the local Canadian phone company priced the calls and billed NYTel for them in Canadian dollars. During the relevant period, the prevailing exchange rate was approximately $1 Canadian = $.85 American. Nordlicht alleges that NYTel billed him in American dollars, without conversion, paid the Canadian phone company in cheaper Canadian dollars, and pocketed the difference.

Based on these allegations, Nordlicht brought a putative class action in New York Supreme Court and asserted claims against NYTel for money had and received and fraud. NYTel removed the case to the Southern District of New York on federal question grounds. Nordlicht moved for a remand to state court, *see* 28 U.S.C. § 1447(c) (1982), and, in the alternative, for summary judgment, *see* Fed.R.Civ.P. 56. Defendant moved for judgment on the pleadings, *see* Fed.R.Civ.P. 12(c), and dismissal of the fraud claim for failure to plead with particularity, *see* Fed.R.Civ.P. 9(b). The District Court denied the motion to remand. Because defendant's Rule 12(c) motion went beyond the face of the pleadings, the District Court converted it into a cross-motion for summary judgment. On the merits, the District Court dismissed with prejudice Nordlicht's money had and received claim with respect to the international calls. The District Court dismissed without prejudice the remainder of Nordlicht's claims and granted leave to replead within twenty days. Since Nordlicht did not file an amended complaint within that period, the District Court dismissed the remainder of Nordlicht's claims with prejudice. This appeal followed.

## II. Subject Matter Jurisdiction

NYTel removed this case on federal question grounds. 28 U.S.C. § 1441(a) (1982). It seeks to uphold denial of Nordlicht's remand motion by contending that his claims arise under the Federal Communications Act, 47 U.S.C. § 151 *et seq.*, or federal common law. We consider each basis in turn.

Congress has placed common carriers providing interstate telephone service under the jurisdiction of the Federal Communications Commission (FCC) and has enacted a comprehensive regulatory scheme. For example, such carriers are required to furnish telephone service upon reasonable request. *See id.* § 201(a). They are required to file tariffs regarding their rates, to charge reasonable rates, and to avoid unreasonable or discriminatory practices. *See id.* §§ 201–203. Contracts between carriers must also be filed. *See id.* § 211.

Congress has provided a general jurisdictional grant to adjudicate controversies arising under the Communications Act:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

*Id.* § 207. NYTel argues that Nordlicht's claims arise under the Communications Act because the contracts governing its billing methods are on file with, and subject to the supervision of, the FCC.

■ However, the mere fact that the Communications Act governs certain aspects of defendant's billing relationships with its customers does not mean that Nordlicht's claims arise under the Act.

The arguments made by NYTel are similar to arguments we rejected in *Ivy Broadcasting Co. v. American Telephone & Telegraph Co.*, 391 F.2d 486 (2d Cir.1968). In *Ivy*, the plaintiff contracted with a telephone carrier for service in connection with the broadcast of sixteen Syracuse University football games. Finding the service unsatisfactory, plaintiff sued the carrier on theories of negligence and breach of contract. Noting that "there is no reason to believe that Congress, in the Communications Act, intended to declare the existence of the fundamental right to recover for tort or breach of contract," *id.* at 489, we held that, since plaintiff was not alleging violation of any specific provision of the Act, jurisdiction did not lie under 47 U.S.C. § 207. Similarly, Nordlicht alleges violation of traditional common law standards and does not allege violation of any specific provision of the Communications Act. Therefore, section 207 does not provide a basis for removal.

In the alternative, NYTel relies on federal common law to support removal. Again, *Ivy* is pertinent. In *Ivy*, we held that, due to the comprehensive nature of Congress's regulation of telephone carriers, federal law preempted state law with regard to certain classes of claims and supplanted it with federal common law:

> [Q]uestions concerning the duties, *charges* and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed solely by federal law and ... the states are precluded from acting in this area. Where ... the Communications Act itself ... [does not] deal[ ] with a particular question, the courts are to apply a uniform rule of federal common law.

391 F.2d at 491 (emphasis added). We also held that the general federal question statute, 28 U.S.C. § 1331, provided a jurisdictional basis for claims arising under federal common law, a conclusion later confirmed by the Supreme Court in *Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972).

■ *Ivy* applied federal common law with respect to claims concerning interstate telecommunications service. The same considerations informing that decision manifestly lead to application of federal common law with respect to Nordlicht's claims concerning the international calls. The Act applies to "all interstate and foreign communication by wire or radio." 47 U.S.C. § 152. Though the intra-Canada calls might not be governed by any provision of the Act, the considerations expressed in *Ivy* also make it appropriate to fashion a uniform body of federal common law for resolution of claims against domestic telecommunications carriers with respect to their billing practices for calls made within a foreign country. We therefore conclude that all of Nordlicht's claims arise under federal common law and that section 1331 provides a jurisdictional basis for his suit.

■ Nordlicht argues that this conclusion violates the principle that a plaintiff is master of his complaint and may avoid removal by relying solely on state law. *See The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). His argument fails to reckon with the "artful pleading" doctrine. As we recently stated:

> If the only remedy available to plaintiff is federal, because of preemption or otherwise, and the state court necessarily must look to federal law in passing on this claim, the case is removable regardless of what is in the pleading.

*Travelers Indemnity Co. v. Sarkisian*, 794 F.2d 754, 758 (2d Cir.1986) (quoting 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3722, at 273–75 (2d ed. 1985)). In these circumstances, a complaint, although purporting to rely solely on state law, is said to contain federal claims artfully pled. Because federal law preempts state law in the area of interstate telecommunications and Nordlicht's claims must necessarily arise under federal common law, the motion to remand was properly denied.

■ Despite its action in removing the case and in successfully defeating the re-

mand motion, NYTel further contends, in response to an inquiry from this Court, that the proper disposition of the suit is dismissal for lack of removal jurisdiction.[1] NYTel does not doubt that a claim over which a district court has original subject matter jurisdiction is normally removable pursuant to 28 U.S.C. § 1441. However, it contends that Nordlicht's claims, even if arising under federal common law rather than federal statutory law, are within the exclusive jurisdiction of the federal courts and for that reason must be dismissed. The second step in this argument relies on the anomalous doctrine of derivative jurisdiction. Since a district court's jurisdiction is derivative in a removal context, a district court must dismiss a complaint if the state court from which the case was removed lacked jurisdiction. This result obtains even if the reason the state court lacked jurisdiction is that the complaint lies within the exclusive jurisdiction of the federal courts. *See Freeman v. Bee Machine Co.,* 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943); *Lambert Run Coal Co. v. Baltimore & Ohio Railroad Co.,* 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922).[2] Congress has recently abolished the doctrine of derivative jurisdiction for claims in civil actions filed in state courts after June 19, 1986. *See* Judicial Improvements Act of 1985, Pub.L. No. 99–336, § 3, 100 Stat. 633, 637 (1986) (adding new subsection (e) to 28 U.S.C. § 1441). However, the doctrine remains applicable to Nordlicht's claims since his civil action was filed in the New York Supreme Court on April 12, 1982. We therefore turn to NYTel's premise—that Nordlicht's claims are within the exclusive jurisdiction of federal courts.

■ Federal courts, not surprisingly, have had few, if any, occasions to consider whether claims founded on federal common law are within exclusive federal jurisdiction. There are few areas of federal common law and even fewer areas of exclusive federal jurisdiction, and the question of whether both areas ever overlap to create exclusive jurisdiction over federal common law claims can arise in the district courts and courts of appeals only in a removal context. Our starting point is the general presumption that state courts enjoy concurrent jurisdiction over federal claims. *See Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 477–78, 101 S.Ct. 2870, 2875, 69 L.Ed.2d 784 (1981); *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 507–08, 82 S.Ct. 519, 522–23, 7 L.Ed.2d 483 (1962). This

1. Since NYTel's objection goes to the subject matter jurisdiction of the District Court, NYTel may raise this objection even though it was not presented to the District Court and even though NYTel is the party that invoked the District Court's jurisdiction by way of removal. *See American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

2. In *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), the Supreme Court may have implicitly relaxed the rigor of the doctrine of derivative jurisdiction in the context of artful pleading. In *Federated Stores,* the Court held that a claim pled under state antitrust law was in reality a federal antitrust claim artfully pled. Federal antitrust claims are within the exclusive jurisdiction of the federal courts. *See Freeman v. Bee Machine Co., supra,* 319 U.S. at 451 n. 6, 63 S.Ct. at 1148 n. 6; *General Investment Co. v. Lake Shore & Michigan Southern Railway Co.,* 260 U.S. 261, 287, 43 S.Ct. 106, 117, 67 L.Ed. 244 (1922). Under the doctrine of derivative jurisdiction, one would have expected the Court to order dismissal of the "federal" claim. How-

ever, without discussion of the derivative jurisdiction doctrine, the Court upheld the District Court's removal jurisdiction, 452 U.S. at 397 n. 2, 101 S.Ct. at 2427 n. 2, and adjudicated the merits. Subsequently one District Court, though noting that *Federated Stores* had created "a shadow of doubt" as to the continuing validity of the derivative jurisdiction doctrine, concluded that the doctrine remained unimpaired and applied it to dismiss without prejudice a claim in a removed suit that was deemed to be a federal antitrust claim artfully pled. *Salveson v. Western States Bankcard Ass'n,* 525 F.Supp. 566, 578–80 (N.D.Cal.1981). The Ninth Circuit reversed on this point, believing *Federated Stores* to have created an exception to the doctrine of derivative jurisdiction at least for a removed "federal" claim artfully pled in state court after the same claim had been brought in federal court and dismissed with prejudice. *Salveson v. Western States Bankcard Ass'n,* 731 F.2d 1423, 1432–33 (9th Cir.1984).

We need not decide the effect of *Federated Stores* on this aspect of the pending appeal since we conclude below that the state court had concurrent jurisdiction.

presumption "can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Gulf Offshore Co. v. Mobil Oil Corp., supra,* 453 U.S. at 478, 101 S.Ct. at 2875. With regard to an area of federal common law, which is normally developed by inference from statutes, it is not surprising that there are no express Congressional commands. As a result, our inquiry must focus on considerations that would make it inappropriate for state courts to exercise jurisdiction over federal common law claims in the interstate telecommunications area. The standards for such an inquiry have recently been enunciated by the Supreme Court:

> The factors generally recommending exclusive federal-court jurisdiction over an area of federal law include the desirability of uniform interpretation, the expertise of federal judges in federal law, and the assumed greater hospitality of federal courts to peculiarly federal claims.

*Id.* at 483–84, 101 S.Ct. at 2878 (citations omitted).

In urging exclusive federal court jurisdiction for federal common law claims in the area of interstate telecommunications, NY-Tel emphasizes that Congress has provided a comprehensive system for the regulation of telephone carriers in the Federal Communications Act. There is a need for uniformity in determining the duties and liabilities of such carriers. Indeed, the need for uniformity is the reason we held in *Ivy Broadcasting Co. v. American Telephone & Telegraph Co., supra,* that federal common law preempts state law and supplies the rule of decision for tort and contract claims relating to the duties, charges, and liabilities of telephone carriers concerning interstate telecommunications.

The Supreme Court has cautioned, however, that the need for uniformity in the application of federal legal standards is not alone a sufficient basis on which federal courts may determine that their jurisdiction is exclusive. *See Pan American Petroleum Corp. v. Superior Court,* 366 U.S. 656, 665–66, 81 S.Ct. 1303, 1309, 6 L.Ed.2d 584 (1961); *Great Northern Railway Co. v. Merchants Elevator Co.,* 259 U.S. 285, 290–91, 42 S.Ct. 477, 478–79, 66 L.Ed. 943 (1922). Moreover, we have previously observed in the copyright context that, though a true copyright claim would lie within the exclusive jurisdiction of federal courts under 28 U.S.C. § 1338(a), a copyright-related claim governed by federal common law and within section 1331 jurisdiction would be within the concurrent jurisdiction of federal courts. *See T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 828 (2d Cir.1964) (Friendly, J.), *cert. denied,* 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965). Mindful of the cautions expressed by the Supreme Court concerning exclusivity of federal statutory claims, we think it would take a truly extraordinary set of circumstances to demonstrate that a claim arising under federal common law is within exclusive federal court jurisdiction.[3] Even if statutory claims under the Communications Act are within exclusive federal jurisdiction, which we do not decide,[4] we see no

---

3. Prior to 1980, when Congress eliminated the $10,000 jurisdictional amount requirement of section 1331, *see* Pub.L. No. 96–486, § 2(a), 94 Stat. 2369 (1980), a holding that federal court jurisdiction over a federal common law claim was exclusive would have to have been limited to claims exceeding the $10,000 threshold amount or else any such claims failing to satisfy the $10,000 threshold amount could not have been brought in any court in the United States, federal or state. No federal statute creating exclusive federal court jurisdiction contains a monetary jurisdictional threshold.

4. A dictum in *Citibank, N.A. v. Graphic Scanning Corp.,* 618 F.2d 222, 225 (2d Cir.1980), states that "the [Communications] Act vests exclusive jurisdiction over claims for damages for statutory violations of the Act in the federal courts or the FCC, 47 U.S.C. § 407." The citation to section 407, which concerns district court jurisdiction to enforce compliance with FCC orders for the payment of money, appears to be a typographical error; section 207, concerning claims for damages for any statutory violations of the Act, must have been intended. The issue of exclusive jurisdiction for statutory claims was not squarely posed in *Citibank* and,

compelling circumstances here to indicate a "disabling incompatibility," *Gulf Offshore Co. v. Mobil Oil Co., supra,* 453 U.S. at 477, 101 S.Ct. at 2875, between Nordlicht's federal common law claims and state court adjudication.[5] Since the New York Supreme Court had concurrent jurisdiction over these claims, the District Court properly exercised derivative removal jurisdiction over them.

### III. Money Had and Received

A. *The International Calls.* Nordlicht asserts a claim for money had and received with respect to the international calls. The essential elements of a claim for money had and received are that "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank,* 731 F.2d 112, 125 (2d Cir.1984) (citation omitted). As noted, Nordlicht alleges that NYTel inequitably retained his money by overcharging him in its capacity as collecting agent for the local Canadian phone company. Nordlicht alleges that the Canadian phone company priced the international calls and billed NYTel in Canadian dollars. Then, according to Nordlicht, NYTel billed him in American dollars, paid the Canadian phone company in Canadian dollars, and pocketed the difference due to the greater worth of the American dollar.

The undisputed factual evidence on this summary judgment record demonstrates that NYTel is entitled to judgment. As to the international calls, NYTel's relationship with the phone companies of Canada is governed by the "Interconnection and Service Agreement Between the American Telephone and Telegraph Company [defendant's predecessor in interest] and the Trans-Canada Telephone System" (the "Agreement"). Under the Agreement, if a party makes a call between the United States and Canada, or vice versa, the party whose customer is to be billed prices the call and collects the charge in its own currency. The Agreement states that any call is to receive the same economic charge in both directions, with due regard for the exchange rate. Each month, the parties settle accounts pursuant to a complex profit-sharing formula. Whichever party owes money is to pay the other party half in the equivalent of Canadian dollars and half in the equivalent of American dollars. In addition to the Agreement, NYTel offered affidavit testimony to establish that the Agreement operates in this fashion. Despite Nordlicht's pleadings, on which he may not rely on these cross-motions for summary judgment, *see* Fed.R.Civ.P. 56(e), he presented to the District Court no evidence to the contrary.

■ Therefore, for the purpose of reviewing the District Court's grant of summary judgment, we must accept as true that NYTel operated in the manner established by the Agreement. As a result, there is no basis for Nordlicht's bare allegation that NYTel was billed in Canadian dollars, collected the charge in American dollars, and pocketed the difference. Under the Agreement, when Nordlicht charged the international calls to his American credit card, NYTel treated Nordlicht as its customer. In effect, NYTel charged Nordlicht for making a call from the United States to Canada. Rather than acting as collecting agent for a Canadian phone company, NYTel priced the calls according to tariffs on file with the FCC and charged the requisite amount. NYTel charged Nordlicht in American dollars because that is how it charges all its customers who call Canada from the United States. There is no unfairness because, in formulating rates for United States-to-Canada phone calls, NYTel is required to take account of the exchange rate and to establish phone rates that ensure that the real economic cost of

in the view we take of this case, need not be decided on this appeal.

5. Any defendant, preferring federal court application or exposition of federal common law, always has the option of removal, as this case demonstrates.

making these phone calls is the same in both directions.

On these facts, Nordlicht cannot make out a claim for money had and received with regard to the international calls. NYTel has not inequitably retained his money by collecting an amount greater than necessary to satisfy his debt with a Canadian phone company. Rather, it has merely collected a charge according to established United States rates from one of its customers. As the District Court noted, the filed tariff doctrine requires NYTel to bill its phone calls in accordance with its tariffs and prevents Nordlicht from making any challenge to these rates. *See Keogh v. Chicago & Northwestern Railway Co.*, 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183 (1922); *City of Groton v. Connecticut Light & Power Co.*, 662 F.2d 921, 929 (2d Cir.1981). Of course, how NYTel shares its profits with Canadian phone companies is of no concern to Nordlicht.

The District Court properly granted NYTel's motion for summary judgment with respect to the money had and received claim as to the international calls.

B. *The Intra-Canada Calls.* There is more of a factual basis for Nordlicht's money had and received claim with respect to the intra-Canada calls. These calls are not covered by the Agreement. The undisputed summary judgment evidence established that the intra-Canada calls were in fact priced and billed by the local Canadian phone company and that NYTel acted only as collecting agent. The Canadian phone companies billed NYTel in American dollars, and NYTel collected the charge from Nordlicht in American dollars. Since the record was silent, the District Court took the view of the facts most favorable to Nordlicht, as it was required to do, and assumed that the charge was billed and collected without the conversion needed to account for the currency exchange rate. Under these circumstances, Nordlicht was required to pay a higher price in real economic terms than he would have had to pay if he had simply put Canadian coins into a Canadian phone.

Despite the seeming unfairness of this system, the District Court correctly noted that Nordlicht could not recover unless the price of the phone calls had been quoted to Nordlicht in Canadian dollars, either expressly or by fair implication. If the price was quoted in American dollars, Nordlicht's making of the calls constituted an acceptance on these terms, and no claim for money had and received will lie. Even if the rate was quoted in Canadian dollars, NYTel was relieved of any responsibility on a money had and received theory once it turned over to a Canadian phone company the amount collected from Nordlicht. Any recovery would lie only against the Canadian phone company for charging an amount in excess of its tariffs unless NYTel retained a service charge for collecting the debt.

However, in resisting summary judgment, Nordlicht did not present any evidence establishing that the price of the intra-Canada calls had been quoted to him in Canadian dollars or that NYTel retained a service charge from the collection process. Therefore, the District Court properly dismissed Nordlicht's claim. Although the District Court would have been justified in dismissing with prejudice, Nordlicht was generously allowed twenty days to amend his complaint to allege supportable claims. When Nordlicht failed to file an amended complaint, the District Court correctly dismissed with prejudice the money had and received claim with respect to the intra-Canada calls.

IV. Fraud

Nordlicht's fraud claim also had potential viability. If the local Canadian phone company affirmatively misrepresented that either the international calls or the intra-Canada calls were priced in Canadian dollars in a scheme to which NYTel was a party, and NYTel then collected payment for the calls in American dollars, without conversion, and pocketed the difference, Nordlicht would indeed have established a right to recover for fraud. Any potential

recovery turns at least in part on the circumstances that induced Nordlicht to make his phone calls. The District Court noted that Nordlicht had neglected to plead how any of the phone call prices were quoted to him. The District Court dismissed Nordlicht's fraud claim without prejudice for failure to comply with Fed.R.Civ.P. 9(b) but granted Nordlicht leave to replead. As before, Nordlicht chose not to take advantage of this opportunity, and the District Court was justified in dismissing Nordlicht's fraud claim as legally insufficient.

## V. Conclusion

The judgment of the District Court is affirmed.