**BANCO DE SANTANDER CENTRAL HISPANO, S.A., Plaintiff,**

v.

**CONSALVI INTERNATIONAL INC., Defendant.**

**No. 05 Civ. 9904(PAC).**

United States District Court, S.D. New York.

March 30, 2006.

Ronald S. Rolfe, Cravath, Swaine & Moore LLP, New York City, for Plaintiff.

Joel B. Harris, Oliver J. Armas, Thacher Profitt and Wood LLP (Two World Fin. Ctr.), New York City, for Defendant.

## MEMORANDUM DECISION AND ORDER

CROTTY, District Judge.

On November 4, 2005, Banco De Santander Central Hispano, S.A. ("Banco") instituted an action in New York Supreme Court, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, to vacate an arbitration award, on the grounds that the arbitrators acted in manifest disregard of the law. On November 23, 2005, Consalvi International Inc. ("Consalvi") filed a petition to remove the state action to Federal Court, pursuant to the removal statute 28 U.S.C. § 1441(b) and the removal provisions of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or the "Convention"). 9 U.S.C. § 205. Seven days later, Consalvi filed its cross-petition to confirm the arbitration award pursuant to 9 U.S.C. § 207.

Banco now moves to remand its vacatur action to New York State Supreme Court, on the ground that this Court lacks subject matter jurisdiction over its Federal Arbitration Act proceeding. Banco urges that there is neither diversity jurisdiction (both parties in the arbitration proceedings are foreigners); nor federal question jurisdiction the Federal Arbitration Act, 9 U.S.C. § 10, while creating substantive law, does not create "subject matter jurisdiction," *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir.2002).

Consalvi, on the other hand, contends the New York Convention and its implementing legislation (9 U.S.C. §§ 201–08 or Chapter 2 of the FAA) are a clear grant of jurisdiction to enforce arbitral awards. 9 U.S.C. § 205 specifically authorizes removal in a case related to the New York Convention.

The Court holds that, under § 205, it has removal jurisdiction over Banco's vacatur action and, thus, denies Banco's motion to remand.

## FACTS

In October 2000, Consalvi (a company incorporated in the British Virgin Islands) and others entered into an agreement to which Banco (a bank incorporated under the laws of Spain) acceded. The agreement dealt with the combination of two internet companies and contemplated a potential public offering. Consalvi, as an investor, sought and was granted a put option, that provided it with a way to dispose of its interest, in the event that a public stock offering were not to occur. The agreement called for the buy-out of Consalvi's interest, via a swap for other shares, and the right to put those exchanged shares to Banco at a price to be determined under the agreement. The agreement was written in Spanish and was to be interpreted in accordance with Span-

ish law. None of the companies party to the agreement were American companies or were located in the United States. The agreement called for the arbitration of any disputes to take place in New York, under the rules of the American Arbitration Association and its International Centre for Dispute Resolution.

On October 6, 2003, Consalvi put its exchanged shares to Banco and sought a price of $67,385,913, which represented its interpretation of the pricing arrangement in the agreement. As the market for internet stocks had by this time collapsed, it is not surprising that Banco refused to pay this amount, and, instead, offered a far lesser amount. Unable to resolve their disagreement, the parties resorted to the arbitration provision of the agreement.

Consalvi called for arbitration on January 23, 2004, and sought $67,385,913. On March 27, 2005, the three Spanish arbitrators, who had been appointed to the panel, commenced the proceeding. Both parties to the arbitration were well represented, and exercised in full measure their opportunity to submit briefs, exhibits, witness statements and expert reports. The arbitrators heard live testimony—again, in Spanish. Subsequent to the hearing, the parties asked for, and the arbitrators permitted, another round of briefs. The arbitration concluded on May 31, 2005 after the post-hearing submissions. The arbitration panel made its award on September 1, 2005, with one arbitrator dissenting, and ruled that Consalvi had the right to put its exchanged shares to Banco and that Banco was obligated to pay $67,385,913, plus interest.

On September 27, 2005, Banco asked for an "Interpretation and Correction" of the award. On October 21, 2005, the arbitra-

tion panel issued a "Resolution of the Request for Interpretation and Correction of the Award," which confirmed the aspects of the award which Banco questioned.

Banco then switched law firms. New counsel devised a creative approach to the arbitration proceeding, claiming that the award was not based on the agreement and that it was in manifest disregard of the law. Accordingly, Banco filed its action in New York State Supreme Court to vacate the arbitration award, pursuant to 9 U.S.C. § 10. Having won the race to the courthouse door, Banco now seeks to return to State Court.

## DISCUSSION

The issue which the Court must decide is whether it has removal jurisdiction over Banco's petition to vacate the arbitration award for manifest disregard of the law. The Supreme Court has noted that:

> "The requirement that jurisdiction be established as a threshold matter .. is 'inflexible and without exception'," *Steel Co. v. Citizens for Better Env't*, 523 U.S. [83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)] (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)); for "jurisdiction is power to declare the law," " 'and without jurisdiction the court cannot proceed at all in any cause'." 523 U.S. at 94, 118 S.Ct. 1003 (quoting *Ex parte McCardle*, 7 Wall. 506, 74 U.S. 506, 19 L.Ed. 264 (1868))....

> Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter....

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).[1] Recently, the Second Circuit reit-

---

**1.** The specific question before the Court in *Ruhrgas* was " 'whether a federal district court is absolutely barred in all circumstances from dismissing a removed case for lack of personal jurisdiction without first deciding its subject-matter jurisdiction' " *Ruhrgas AG. v. Marathon Oil Co.*, 526 U.S. 574, 578, 119

erated that "[j]urisdictional questions ... should be addressed in the first instance by the District Court." *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 203 (2d Cir.2005). This is equally true in the context of removal. *McRae v. Arabian American Oil Co.*, 293 F.Supp. 844, 846 (S.D.N.Y.1968) ("A district court is required ... to ... determine federal jurisdiction of a removed case and to be sure that federal jurisdiction exists.") (citations omitted); *see also U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir.2002) (stating that the obligation of the federal courts to examine subject matter jurisdiction extends to removal cases). Determination of whether the Court has removal jurisdiction in the instant case turns on the interplay between the general removal provision, 28 U.S.C. § 1441, the FAA's specific removal provision for agreements and awards falling under the Convention, 9 U.S.C. § 205, and the grant of original jurisdiction for actions falling under the Convention. 9 U.S.C. § 203. Preliminarily, the Court notes that the jurisprudence in this area is not well-settled, and the Second Circuit has not addressed this issue specifically.

Consalvi seeks to remove the state-court action "[p]ursuant to provisions of 9 U.S.C. § 205 and 28 U.S.C. § 1441(b)" (Resp.'s Notice of Removal ¶ 1). The Court first considers removal pursuant to the general removal provision, 28 U.S.C. § 1441, and then under the specific removal provision contained in Chapter 2 of the FAA, which implements the New York Convention. 9 U.S.C. § 205.

## I. Removal Pursuant to § 1441—General Framework

■ In *City of Chicago v. International College of Surgeons*, the Supreme Court described removal jurisdiction under 28 U.S.C. § 1441 as follows:

> As a general matter, defendants may remove to the appropriate federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). The propriety of removal thus depends on whether the case originally could have been filed in federal court. *Caterpillar Inc. v. Williams*, 482 U.S. [386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)]; *Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. [1, 8, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)]. The district courts have original jurisdiction under the federal question statute over cases "arising under the Constitution, laws, or treaties of the United States." § 1331. "It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. [58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)].

522 U.S. 156, 163, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). Thus, "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant[;] absent diversity of citizenship, federal-question jurisdiction is required." *Caterpillar Inc. v. Williams*, 482 U.S. at 392, 107 S.Ct. 2425.

Banco urges that it could not have commenced its state-court action in federal

---

S.Ct. 1563, 143 L.Ed.2d 760 (1999). The Court "[held] that in cases removed from state court to federal court, as in cases originating in federal court, there is no unyielding jurisdictional hierarchy," and that in appro-

priate cases a district court could first consider personal jurisdiction. *Id.* It is critical that the Court establish its jurisdiction (both subject matter and personal) first. *Id.* at 577, 119 S.Ct. 1563.

court. There is no diversity (both being foreign entities). *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. at 580 n. 2, 119 S.Ct. 1563 (foreign citizenship of defendant and of plaintiff rendered diversity incomplete). Nor is there subject matter jurisdiction (adjudication of FAA claims in district court require an independent basis for federal subject matter jurisdiction). *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The plaintiff's "well-pleaded complaint," thus, does not "raise[ ] issues of federal law." *City of Chicago v. International Coll. of Surgeons,* 522 U.S. at 163, 118 S.Ct. 523.[2] Accordingly, Banco submits, with neither diversity nor "arising under" jurisdiction, § 1441(a) does not provide a basis for this Court to exercise removal jurisdiction.[3] The Court agrees that it does not have jurisdiction on this basis.

**2.** Banco maintains that it could not have commenced a federal action to vacate the arbitral award under the Convention. The Second Circuit has indicated that district courts do not have original jurisdiction over such actions. *See, e.g., International Shipping Co. v. Hydra Offshore, Inc.,* 875 F.2d 388, 391 n. 5 (2d Cir.1989) ("Appellants' contentions that jurisdiction could be premised on the Convention on the Recognition and Enforcement of Foreign Arbitral Awards were also *appropriately rejected*[;] [t]he district court found the Convention inapplicable in this case because the party invoking its provisions did not seek either to compel arbitration or to enforce an arbitral award." (emphasis added)); *see also Lander Co., Inc. v. MMP Invs., Inc.,* 107 F.3d 476, 478 (7th Cir.1997) ("[T]he New York Convention contains no provision for seeking to vacate an award, although it contemplates the possibility of the award's being set aside in a proceeding under local law, Art. V(1)(e), and recognizes defenses to the enforcement of an award." (citation omitted)); *Borden, Inc. v. Meiji Milk Prods. Co., Ltd.,* 919 F.2d 822, 826 (2d Cir.1990) (citing *International Shipping Co.* with approval); *Gulf Petro Trading Co., Inc. v. Nigerian Nat'l*

## II. Removal Pursuant to Statutory Exceptions to § 1441

Section 1441, however, contains an express statutory exception clause. The provision states as follows:

> *Except as otherwise expressly provided by Act of Congress,* any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the pace where such action is pending.

28 U.S.C. § 1441(a) (emphasis added). Pursuant to an express statutory exception, a district court's removal jurisdiction can be either narrower or broader than original jurisdiction. 16 Moore's Federal Practice § 107App.113[1] (Matthew Bender 3d ed.). Most circumstances involving the express statutory exception concern removal jurisdiction that is narrower than

*Petroleum Corp.,* 288 F.Supp.2d 783, 793 (N.D.Tex.2003) (concluding that the federal court did not have subject matter jurisdiction to set aside an arbitral award falling under the Convention); Alan Scott Rau, *The New York Convention in American Courts,* 7 Am. Rev. Int'l Arb. 213, 235–36 (1996) ("The overall scheme of the Convention entails a deference to the control function of the state where an award is rendered; since the 'normal' scenario will be one in which an award is rendered in one state and enforcement is sought in another, the Convention necessarily speaks only to the obligation of the enforcing state— and makes no provision at all with respect to direct challenges aimed at upsetting the award in the place where it was made.").

**3.** Consalvi cites § 1441(b) as a statutory basis in its Notice of Removal (Resp.'s Notice of Removal ¶ 1). Since the Court concludes that it does not have original jurisdiction over a petition to vacate an arbitral award that falls under the Convention, 28 U.S.C. § 1441(b) does not provide a basis for removal jurisdiction since it depends on the district court having original jurisdiction over the state-court civil action.

original jurisdiction. In such circumstances, an action that originally could have been brought in federal court may not be removed to federal court once it is commenced in state court.[4]

■ Circumstances involving removal jurisdiction that is broader than original jurisdiction appear to be far less common and are comprised of two distinct subcategories. The first group comprises provisions that provide jurisdictional grants of removal only and require independent "arising under" jurisdiction. For example, 28 U.S.C. § 1442(a) permits removal of criminal and civil proceedings brought against federal officers even if the state-court action could not have been commenced by the plaintiff in the federal forum. *Mir v. Fosburg*, 646 F.2d 342, 344 (9th Cir.1980). Because § 1442(a) does not provide "arising under" jurisdiction, defendants must assert a colorable federal defense in order to properly invoke subject matter jurisdiction. *Mesa v. California*, 489 U.S. 121, 129, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989).[5] By contrast, as discussed in greater detail below, the second group permits removal of "pure" state-court actions (*e.g.* actions that assert no federal claims whatsoever) because these removal provisions are part of comprehensive schemes created by Congress, which also confer "arising under" jurisdiction and help channel cases with significant federal interests into federal court. *See, e.g., Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983) (considering the constitutionality of the Foreign Sovereign Immunities Act of 1976); *Mizuna, Ltd. v. Crossland Fed. Savings Bank*, 90 F.3d 650 (2d Cir.1996) (analyzing the Financial Institutions Reform, Recovery, and Enforcement Act of 1989).

### III. Removal Pursuant to 9 U.S.C. § 205

As noted previously, in its Notice of Removal, Consalvi also moved pursuant to 9 U.S.C. § 205. This section states, in relevant part, that:

> Where the subject matter of an action or proceeding pending in a State court *relates to* an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district or division embracing the place where the action or proceeding is pending. . . . [T]he ground for removal provided in this section need not appear on

---

4. Examples where the federal court has original jurisdiction but does not have removal jurisdiction include: where the action involves diversity but the defendant is sued in a court of his state, 28 U.S.C. § 1441(b); where the action is brought under the Federal Employers' Liability Act, § 1445(a); and where the action is brought under the Jones Act. *Moltke v. Intercontinental Shipping Corp.*, 86 F.Supp. 662, 663 (S.D.N.Y.1949) ("An action under the Jones act may not be removed." (citations omitted)); *see also Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 696, 123 S.Ct. 1882, 155 L.Ed.2d 923 (2003) (setting out numerous additional examples of "indisputable prohibitions of removal" in § 1445(a) and other statutes).

5. Removal under 28 U.S.C. § 1442(a) of state-court actions alleging no federal claims raised constitutional concerns, which the Supreme Court addressed in *Mesa v. California*, 489 U.S. 121, 136, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). The Court held that what permits § 1442(a) to pass constitutional muster is that defendants must "allege a colorable defense under federal law," 489 U.S. at 129, 109 S.Ct. 959, otherwise the removal would " 'expand[ ] the jurisdiction of the federal courts beyond the bound established by the Constitution'." *Id.* at 136, 109 S.Ct. 959 (citation omitted). Defendants must allege that federal defense prior, rather than after, removal. *Dalrymple v. Grand River Dam Authority*, 145 F.3d 1180, 1183, 1185 (10th Cir.1998).

the face of the complaint but may be shown in the petition for removal.... *Id.* (emphasis added). There are three significant differences between § 205 and § 1441. First, § 205 permits removal "at any time before the trial." By contrast, the notice of removal of a civil action under the general removal provision must be filed within thirty days after service of the state court pleadings. 28 U.S.C. § 1446(b). Second, § 205's provision that "the ground for removal provided ... need not appear on the face of the complaint" creates a statutory exception to the " 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams,* 482 U.S. at 392, 107 S.Ct. 2425 (citation omitted). Finally, and most importantly for purposes of this analysis, § 1441 and § 205 articulate the bases for removal differently. Section 205 permits removal "[w]here the subject matter of an action or proceeding pending in a State court *relates to* an arbitration agreement or award falling under the Convention." (Emphasis added.) The scope of removal jurisdiction is thus keyed to how broadly or narrowly the Court construes the phrase "relates to." Section 1441, however, expressly grounds removal jurisdiction on the pre-existence

of original jurisdiction. 28 U.S.C. § 1441 ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants....").

Section 203 of this Chapter confers district courts with original jurisdiction over "[a]n action or proceeding falling under the Convention."[6] Consalvi argues that § 203, in conjunction with § 205, confers an absolute right of removal.

## A. Overview of Case Law Involving § 205 Removal

Subject matter jurisdiction under § 205 raises "a difficult and novel question." *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. at 588, 119 S.Ct. 1563.[7] Few published decisions concern § 205 removal and fewer still address removal and subject matter jurisdiction at any length. Moreover, the sparse authority which exists is split over the issue squarely before the Court.

Banco relies on two district court decisions, only one of which involved removal of a state-court action to vacate arbitration awards under the Convention. *HSMV Corp. v. ADI Ltd.,* 72 F.Supp.2d 1122 (C.D.Cal.1999) (involving removal); *Tesoro Petroleum Corp. v. Asamera (S.Sumatra) Ltd.,* 798 F.Supp. 400 (W.D.Tex.1992) (in-

---

**6.** Section 203 provides as follows:

An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States ... shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C. § 203.

**7.** As noted earlier, *see supra* n. 1, in *Ruhrgas AG* the Supreme Court addressed whether a court may ever consider personal jurisdiction prior to subject matter jurisdiction and concluded that it may. *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. at 579–80, 119 S.Ct. 1563.

In its notice of removal, defendant had asserted three bases of federal jurisdiction, including § 205 removal. *Id.* Plaintiff sought to remand the case for lack of federal subject-matter jurisdiction. *Id.* at 580, 119 S.Ct. 1563. The Court never reached the issue of § 205 removal jurisdiction, which involved a complicated inquiry, in part, given a complex factual history. *Id.* at 582, 119 S.Ct. 1563. The Court also referenced an appellate decision stating that defendant's "argument under 9 U.S.C. § 205 presented a difficult issue of first impression." *Id.; see also id.* at 588, 119 S.Ct. 1563 ("the alleged defect in subject-matter jurisdiction raises a difficult and novel question").

volving not removal, but venue). In both instances, these district courts concluded that, under the Convention, district courts do not have original jurisdiction over vacatur actions. *HSMV Corp. v. ADI Ltd.,* 72 F.Supp.2d at 1127 n. 8; *Tesoro Petroleum Corp. v. Asamera (S.Sumatra) Ltd.,* 798 F.Supp. at 405. In one instance, the court concluded that removal and original jurisdiction correspond completely such that, because no original jurisdiction existed over the state-court actions, the court did not have removal jurisdiction. *HSMV Corp. v. ADI Ltd.,* 72 F.Supp.2d at 1127 n. 8. In the second instance, the court dismissed the vacatur action for lack of subject matter jurisdiction. *Tesoro Petroleum Corp. v. Asamera,* 798 F.Supp. at 405.

By contrast, several other courts have reached the opposite conclusion and held that § 205 confers broad removal jurisdiction. While a number of decisions assumed removal jurisdiction without elaboration,[8] this Court focuses its discussion on one decision that provided in-depth analysis. In *Beiser v. Weyler,* the Fifth Circuit examined the propriety of § 205 removal over a state-court action asserting state tort claims only. 284 F.3d 665, 667 (5th Cir.2002). Defendant removed and moved to compel arbitration. *Id.* Plaintiff moved to remand. Plaintiff did not contest that the arbitration agreement fell under the Convention "within the meaning of § 205," but instead argued that he was not a party to that agreement. *Id.* The court concluded that the "relates to" language in § 205 was broad enough to "encompass the relationship between the arbitration clauses in the agreements and [plaintiff's state-court] suit." *Id.* at 669. The court went further and stated:

> [W]henever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement "relates to" the plaintiff's suit. Thus, the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense. As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case. That is all

---

**8.** Some cases involving § 205 removal turned on non-jurisdictional concerns where plaintiffs raised non-jurisdictional challenges, and the courts either did not need to reach the issue of removal jurisdiction or assumed removal jurisdiction. *See, e.g., Suter v. Munich Reinsurance Co.,* 223 F.3d 150, 152, 162 (3d Cir.2000) (§ 205 removal of state-court action asserting state claims only; reversing remand based on various non-jurisdictional claims and assuming removal jurisdiction without discussion); *Travelers Insur. Co. v. Keeling,* 996 F.2d 1485, 1487–90 (2d Cir.1993) (§ 205 removal of state-court action asserting state claims only; affirming remand based on waiver of right to removal without discussing scope or propriety of removal jurisdiction). In other instances, courts have exercised § 205 removal jurisdiction without discussion. *Jacada, Ltd. v. International Marketing Strategies, Inc.* involved removal of a state-court action to vacate an arbitral award under the Convention between diverse parties. 401 F.3d 701, 704 (6th Cir.2005). Following the filing of the state-court action, defendants filed a federal action to enforce the award, which action the district court stayed.*Id.* Defendants then removed relying solely on § 205 (and not on diversity).*Id.* Plaintiffs did not raise jurisdictional claims and the Sixth Circuit concluded that removal jurisdiction existed. *Id.* at 704 n. 2 ("If the Convention applies to this case, [defendant] properly removed the state court suit." (citing §§ 205 and 203)); *see also Celulosa Del Pacifica S.A. v. A. Ahlstrom Corp.,* 1996 U.S. Dist. LEXIS 2747, at *1, 10 (S.D.N.Y. Mar. 11 1996) (involving removal of state court action to vacate arbitral award falling under the Convention; petitioner did not contest (and the court without discussion assumed) removal jurisdiction).

that is required to meet the low bar of "relates to."

*Id.; see also Wilson v. Deutsche Bank AG,* No. 05 Civ. 3474, 2005 WL 3299366, *3, 2005 U.S. Dist. LEXIS 30959, at *10–11 (N.D.Ill. Nov. 30, 2005) (following *Beiser* and denying motion to remand); *York Hannover Holding A.G. v. American Arbitration Association,* 794 F.Supp. 118, 122–23 (S.D.N.Y.1992) (construing § 205 "relates to" language broadly and denying motion to remand).

The *Beiser* court went on to explain as follows:

> For most forms of federal question jurisdiction, whether the court has jurisdiction can be determined from the face of the pleadings. Section 205 confers a form of federal question jurisdiction: it permits the federal courts to decide cases that arise "under ... Treaties made" by the United States. U.S. Const. Art. III, § 2....
>
> Conceptually, whether a federal court has jurisdiction to decide an issue is a distinct question from how to decide that issue correctly.... Whether the district court has jurisdiction can be determined from the "face of the plaintiff's well-pleaded complaint"—from the pleading itself, without the requirement of evidence or a merits inquiry....
>
> The language of § 205 strongly suggests that Congress intended that district courts continue to be able to assess their jurisdiction from the pleadings alone. Section 205 provides in part: "The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint *but may be shown in the petition for removal.*" 9 U.S.C. § 205 (emphasis added). This language does create one difference between the federal question jurisdiction conferred by § 205 and most other forms of federal

question jurisdiction: it permits removal on the basis of a federal defense. The language that the ground for removal "need not appear on the face of the complaint" explicitly abrogates the well-pleaded complaint rule that normally keeps such defenses from serving as the basis for federal question jurisdiction. But at the same time the statute permits a defense based on an arbitration clause to serve as a grounds for removal, it also directs us to treat such defenses the same way that we treat offensive claims. That is, just as we determine whether a plaintiff's claim arises under federal law from the complaint alone, the statute directs us to determine whether a defendant's defense arises under federal law from the "petition for removal" alone.

*Id.* at 670–71.

The Second Circuit has noted, in dicta, the provision's abrogation of the "well-pleaded complaint rule". The court explained that:

> When Congress has intended to create an exception to the well-pleaded complaint rule, it has provided so explicitly. *See, e.g.,* 28 U.S.C. § 1442(a) (allowing removal to federal court of civil or criminal actions filed in state court against officers of the United States); 12 U.S.C. § 632 (providing for original and removal jurisdiction over certain cases raising issues with respect to foreign or international banking). Indeed, when Congress in 1970 intended to expand federal jurisdiction to give the United States district courts the authority to hear specified arbitration cases under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.,* it did so expressly. *See* 9 U.S.C. § 203 (giving federal district courts jurisdiction over an action or proceeding falling under the Convention); 9 U.S.C. § 205 (allowing cases within the Conven-

tion to be removed from state to federal court notwithstanding the well-pleaded complaint rule).

*Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 268–69 (2d Cir.1996).

If § 205 removal were limited to only state-court actions seeking to compel arbitration or confirm an arbitration award, Congress would not have needed to expressly abrogate the "well-pleaded complaint rule." By specifying that "the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal," 9 U.S.C. § 205, Congress expressly granted removal jurisdiction to a class of state-court actions, which plaintiffs commenced without pleading any express claims under the Convention—*i.e.*, containing state claims only or setting out a vacatur action—so long as defendants could articulate a "federal defense" "related to" the Convention.

Case law from the Supreme Court and Second Circuit analyzing jurisdictional provisions (both statutory grants of jurisdiction, as well as removal statutes) and their constitutionality lend support to this conclusion. In *Verlinden B.V. v. Central Bank of Nigeria*, the Supreme Court examined the Foreign Sovereign Immunities Act of 1976 ("FSIA") and considered whether its "authorizing a foreign plaintiff to sue a foreign state in a United States district court on a nonfederal cause of action ... violate[d] Article III of the Constitution." 461 U.S. at 482, 103 S.Ct. 1962. Notably, "the Act guarantees foreign states the right to remove any civil action from a state court to a federal court" and "provides that any claim permitted under the Act may be brought from the outset in federal court." *Id.* at 489, 103 S.Ct. 1962 (citing 28 U.S.C. §§ 1330(a) and 1441(d)). The Court concluded that "the 'Arising Under" Clause of Article III provides an appropriate basis for the statutory grant of subject-matter jurisdiction to actions by foreign plaintiffs under the Act." *Id.* at 492, 103 S.Ct. 1962.[9]

The Court noted that "the question of foreign sovereign immunity in this case arose solely as a defense, and not on the face of Verlinden's well-pleaded complaint." *Id.* at 494, 103 S.Ct. 1962. The Court then went on to distinguish "jurisdictional cases," which "do nothing more than grant jurisdiction over a particular class of cases," *id.* at 496, 103 S.Ct. 1962, from a statutory framework that reflects Article III "arising under jurisdiction." *Id.* at 494–95, 103 S.Ct. 1962. The Court explained:

> [I]n enacting [FSIA], Congress expressly exercised its power to regulate foreign commerce, along with other specified Article I powers. [The] primary purpose of the Act was to "[set] forth comprehensive rules governing sovereign immunity;" the jurisdictional provisions of the Act are simply one part of this comprehensive scheme. The Act thus does not merely concern access to the federal courts. Rather, it governs the types of actions for which foreign sovereigns may be held liable in a court in the United States, federal or state....
>
> Congress, pursuant to its unquestioned Article I powers, has enacted a broad

---

**9.** In explaining its conclusion, the Supreme Court noted that:

> Congress exercised its Article I powers by enacting a statute comprehensively regulating the amenability of foreign nations to suit in the United States. The statute must be applied by the district courts in every

action against a foreign sovereign, since subject-matter jurisdiction in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity. 28 U.S.C. § 1330(a).

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. at 493, 103 S.Ct. 1962.

statutory framework governing assertions of foreign sovereign immunity. In doing so, Congress deliberately sought to channel cases against foreign sovereigns away from the state courts and into federal courts, thereby reducing the potential for a multiplicity of conflicting results among the courts of the 50 States.

*Id.* at 497, 103 S.Ct. 1962.

Thus the question is whether § 205 is merely a jurisdictional provision providing access to the federal courts, but requiring an independent basis of subject matter jurisdiction; or, whether Chapter 2 of the FAA constitutes a statutory scheme "comprehensively regulating" a federal interest. *Verlinden,* 461 U.S. at 493, 103 S.Ct. 1962.

The Second Circuit in *Mizuna, Ltd. v. Crossland Federal Savings Bank* provides some guidance. 90 F.3d at 650. The court considered removal jurisdiction under 12 U.S.C. § 1819(b)(2), which "provides for removal solely by virtue of the fact that the FDIC is a party." *Id.* at 655. The court first compared 12 U.S.C. § 1819(b)(2) to 28 U.S.C. § 1442(a), discussed previously and concerning state-court actions involving federal officers. The court described § 1442(a) as "a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant" such that "the enactment 'cannot independently support Article III "arising under" jurisdiction'" *Id.* (citing *Mesa,* 489 U.S. at 136, 109 S.Ct. 959). Thus, § 1442(a) "does not furnish an independent ground for federal jurisdiction absent some federal question implicated either in the claim or by way of a defense." *Id.*

By contrast, § 1819(b)(2), a part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), *see infra* (discussing Congressional purpose behind FIRREA's enactment),

provides both statutory grants of original jurisdiction and of removal jurisdiction. The provision states that "all suits of a civil nature ... to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A). Another subsection provides in main part that "the [FDIC] may ... remove any action, suit, or proceeding from a State court to the appropriate United States district court." § 1819(b)(2)(B). In *Mizuna*—as in the case at bar—state-court plaintiff's complaint "invoked no federal law, and no federal defense was interposed by [defendant]. 90 F.3d at 655. The court stated that "[t]he relevant considerations are stated in *Mesa* and *Verlinden,*" *id.*:

> Statutes (such as § 1442(a)) that "seek 'to do nothing more than grant jurisdiction over a particular class of cases' cannot support Article III 'arising under' jurisdiction." However, where the removal jurisdiction is part of "a 'comprehensive scheme' comprising both pure jurisdictional provisions and federal law capable of supporting Article III 'arising under' jurisdiction," the jurisdictional grant is effective....
>
> For our purpose, the ... instructive aspect of *Verlinden* is its determination that the jurisdictional subsection is within Article III by reason of its relationship to the larger enactment. The Court emphasized that [FSIA] did more than merely recite a grant of access to the district court; it expressly invoked the powers of Congress to regulate foreign commerce, along with other Congressional powers, and constituted a comprehensive scheme....

*Id.* at 655–56 (citations omitted).

The court then placed great emphasis on how § 1819(b)(2) is part of FIRREA, which the court deemed "a comprehensive scheme":

[W]e are satisfied that the particular jurisdictional grant is part of a comprehensive scheme enacted by Congress to serve and promote incontestably federal goals on a comprehensive basis. FIRREA makes major administrative and structural changes in the FDIC and, even more broadly, in the reform of the thrift industry and federal deposit insurance.

In a general way, the jurisdictional grant in FIRREA enhances the effectiveness and uniformity of proceedings in which the FDIC exercises the sweeping powers conferred on it by the Act. It is sufficiently clear (to paraphrase *Verlinden*, 461 U.S. at 497, 103 S.Ct. 1962) that "Congress, pursuant to its unquestioned Article I powers, has enacted a broad statutory framework"—here, one that confers suitable procedural and substantive rights and powers on the FDIC—and "deliberately sought to channel" the cases in which the FDIC would have or may wield those powers "away from the state courts and into federal courts, thereby reducing the potential for a multiplicity of conflicting results among the courts of the 50 states".... [T]he jurisdictional grant in § 1819(b)(2)(A-B) falls within the ambit of cases where "the whole purpose of the congressional legislative program ... requires the availability of federal jurisdiction...."

*Id.* at 656–57 (some citations omitted).

Thus, because "the grant of jurisdiction in 12 U.S.C. § 1819(b)(2) is an integral part of a 'comprehensive scheme'," *id.* at 656, "enacted by Congress to serve and promote incontestably federal goals on a comprehensive basis," *id.* the court concluded "that the district court had the power to decide this case notwithstanding the absence of any federal law issue in the complaint or in the answers," *id.* at 657, upon removal.

■ Chapter 2 of the FAA, like 12 U.S.C. § 1819(b)(2), contains both a statutory grant of subject matter jurisdiction—9 U.S.C. § 203—and statutory grant of removal jurisdiction. 9 U.S.C. § 205. No one can seriously question that this comprehensive scheme was "enacted ... to serve and promote incontestably federal goals on a comprehensive basis." *Mizuna*, 90 F.3d at 656. The Supreme Court stated that:

> The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

*Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). Moreover, foreign policy considerations implicate the Convention. The Supreme Court noted that "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes" underlie accession to the Convention. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 629, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Moreover, the legislative history clearly indicates Congress's intent to regulate foreign commerce in enacting Chapter 2. S.Rep. No. 91–702, at 6 (1970) (noting regulation of foreign commerce in Chapter 2's statutory scheme).

Unlike other cases, the Supreme Court has not held yet that Chapter 2 "deliberately [seeks] to channel" Convention cases "away from the state courts and into federal courts, thereby reducing the potential for a multiplicity of conflicting results

among the courts of the 50 States." *Verlinden,* 461 U.S. at 497, 103 S.Ct. 1962. Instead, in *Ruhrgas,* the Supreme Court—while deciding a distinct issue from the one at bar—focused on the need of "expedition and sensitivity to state courts' coequal stature." 526 U.S. at 587, 119 S.Ct. 1563.[10] Nevertheless, this Court is convinced that under the teachings of *Verlinden* and *Mizuna* Chapter 2 constitutes a "comprehensive scheme" that furthers "uncontested" federal goals.

The legislative history suggests the intention of a distinct federal role in the enforcement of Convention awards and agreements. S.Rep. No. 91–702, at 6 (1970) (stating that "the proposed system of implementation through the U.S. district courts will assist the uniform and efficient enforcement of arbitration agreements and awards in foreign commerce"); *see also Suter v. Munich Reinsurance Co.,* 223 F.3d 150, 158 (3d Cir.2000) ("[T]he Convention Act and the policy choices that support it establish a strong and clear preference for a federal forum...."). Moreover, the court here will exercise jurisdiction over exclusively federal claims and will not wrest from the state court any state claim or infringe on any state interest. *See Nordlicht v. New York Tel. Co.,* 799 F.2d 859, 865 (2d Cir.1986) (affirming denial of remand where state court had concurrent jurisdiction over federal common law claims); *cf. BankAmerica Corp. Sec. Litig.,* 263 F.3d 795, 803 (8th Cir.2001) (in the federal securities context, a removal provision would be rendered "meaningless if a state-court plaintiff who has won the race to the state courthouse may seize control of the litigation of the federal claims").

Policy considerations of judicial economy and judicial efficiency also support removal in this case. Granting Banco's remand but permitting Consalvi to litigate its cross-petition will waste judicial resources and could lead to parallel proceedings resulting in potentially conflicting rulings or, more likely, further motions regarding requests for stays. And, the Second Circuit has expressly permitted the litigation of claims—stemming from a single arbitration award—under both the FAA and the Convention in a federal forum. *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.,* 126 F.3d 15, 23 (2d Cir.1997).

There is an additional measure of comfort in Consalvi's cross-petition to enforce the arbitral award, thereby invoking this Court's subject matter jurisdiction. While subject matter jurisdiction would be more readily established had Consalvi first asserted federal defenses in the state-court action and then removed Banco's vacatur action—a la *Mesa;* or, had Consalvi first petitioned for enforcement of the arbitral award and then removed Banco's vacatur action, granting Banco's remand motion now and forcing Consalvi at this juncture to either assert a federal defense in the state-court action and then remove; or remand and remove based on the pending petition to enforce, seems unduly formalistic.

## CONCLUSION

Banco's motion to remand is denied. The Court has subject matter jurisdiction

---

10. In *Ruhrgas AG,* which dealt with several bases of removal jurisdiction (including § 205), the Supreme Court stated as follows:

    Most essentially, federal and state courts are complementary systems for administering justice in our Nation. Cooperation and comity, not competition and conflict, are essential to the federal design. A State's dignitary interest bears consideration when a district court exercises discretion in a case of this order.

    526 U.S. at 586, 119 S.Ct. 1563. Nonetheless, there is a substantial question here as to exactly what the New York State court's dignitary interest is in enforcing Chapter 2 of the FAA.

over Banco's petition to vacate the arbitral award under the FAA, as well as over Consalvi's cross-petition to confirm. Banco has reserved its rights to submit further materials in support of its petition to set aside the arbitral award, should the Court refuse to remand. It may do so. Consalvi may respond. Similarly, Consalvi may supplement its papers to enforce the arbitral award, and Banco must have an opportunity to respond.

The parties should meet and establish an appropriate briefing schedule and submit it to the Court.

SO ORDERED.